Willie Louis Russaw was indicted and convicted for capital robbery-murder pursuant to Ala. Code 1975, § 13A-5-40(a)(2). He was sentenced to death by electrocution. The defendant raises 21 issues on this appeal from that conviction and sentence.
 I.
The trial court committed plain error in its oral instructions to the jury because the jury was not instructed that in order to find the defendant guilty of the capital offense charged in the indictment they had to find that the defendant had a "particularized intent to kill." That error requires a reversal of the defendant's conviction.
The State's evidence shows that the victim died from at least three blunt force injuries to the back of his head and that these injuries were most probably inflicted with an ax handle wielded by Henry James Starks (alias Russaw), a cousin of the defendant. Ronald Grey, Stacey Grey, and Earl Adams were also involved in the robbery.[1] Adams and the Greys testified against the defendant at trial. Adams testified that Starks went inside the store first. About "2 seconds" later, the defendant entered the store and "went around behind the counter and grabbed [the victim] and threw him down. [Starks] went over to the corner and picked up an ax handle and hit him." Ronald Grey testified that he saw the defendant "just standing there . . . straddling [the victim] from behind." According to Ronald, Starks was standing in front of the victim "just holding" an ax handle. Ronald did not see Starks hit the victim. The defendant fled from the store into the waiting automobile with the victim's wallet. In his written order imposing the death sentence, the trial court found that "the evidence proves beyond doubt that the defendant was a major participant in the robbery and murder. Although the victim was actually beaten to death by the defendant's co-defendant [Starks], the State proved beyond a reasonable doubt that the defendant personally held the victim down while the victim was being beaten to death."
This evidence was not disputed. Henry Stark was the "triggerman," and there was no contention that anyone else struck the fatal blows. However, there was no testimony of any plan to kill the victim. In fact, under the evidence presented at trial, the only real question the jury had to decide *Page 1290 
was whether the defendant was guilty of felony-murder or capital murder-robbery: Was he merely a participant in a robbery during which a person was killed, or was he a knowing accomplice to the intentional killing and robbery of the victim?
In this regard, the trial court instructed the jury as follows:
 "Now, this indictment simply reads this way, 'That the Grand Jury of said County charges that . . . Willie Louis Russaw, . . . did intentionally cause the death of Travis Gerald Benton by striking the said Travis Gerald Benton with an axe handle . . ., and Willie Louis Russaw caused said death during the time that Willie Louis Russaw was in the course of committing or attempting to commit a theft. . . .'
". . . .
 "Now, ladies and gentlemen, this defendant is charged with a capital offense. That means that he is charged with aggravated murder. He's charged with intentional murder with the circumstances of aggravation being that it was committed during the course of a robbery in the first degree. Now, he's charged with capital murder. He's charged with a capital offense.
 "Now, that — and the Code of Alabama under which this defendant is charged is charged with this capital offense, Title 13A-5-39(a)(2). [sic]. The following are capital offenses. Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant. That's what the defendant is charged with.
". . . .
 "Now, the complicity statutes in the State of Alabama are found in this Code Section, 13A-2-23. Now, that law simply says this. A person is legally accountable for the behavior of another constituting a criminal offense if with the intent to promote or assist the commission of the offense, one he procures, induces, or causes such other person to commit the offense, or two, he aids or abets such other person in committing the offense. Each person who joins an unlawful enterprise is responsible for the result whether committed by one or all. All persons concerned in the commission of a felony directly or indirectly or by aiding and abetting in its commission are equally guilty. This section defines complicity in clear, direct, and explicit terms. The test is whether the accused with the intent to promote or assist the perpetration of an offense did any of the enumerated acts, that is, did he procure, induce, or cause such other person [to] commit the offense or did he aid and abet such other person in committing the offense. It is a general rule of law that each person entering upon an unlawful purpose is responsible for everything which may consequently and proximately flow from that unlawful purpose. This subsection one that I read to you imposes liability in a situation where the defendant is the party who instigates or starts the complicitous conduct. The subsection two that I read to you imposes liability in a section where one joins in the complicitous actions. The classic words aid and abet are used in this section. Aiding and abetting comprehends all assistance rendered by acts or words of encouragement, support of person actual or constructive to render assistance should it become necessary and no particular acts are necessary. The State must adduce some evidence implying that the defendant either recruited, helped or counseled in preparing the crime or understood some part in its commission. So, then, ladies and gentlemen, the law says that a person is criminally liable for the offense if it was committed by his own behavior, meaning actually participated in it or it was committed by the behavior of some other person, or if you assisted in the commission of the offense.
". . . .
 ". . . So, what it boils down to is simply, every person who has joined an unlawful *Page 1291 
enterprise is responsible for the results whether committed by one or all. That is, all persons concerned in the commission of a felony are guilty as the actual perpetrator of a criminal act and proved beyond a reasonable doubt that they procured the commission of the crime, they induced or caused some person to commit the offense, or on proof of aiding and abetting another in its commission. Now, that's what the law has to say about complicity.
". . . .
 ". . . As I said to you the defendant is charged with the capital offense of murder during the robbery in the first degree or in [an] attempt thereof committed by the defendant. Now, to sustain a conviction under the statute that I just read to you for capital murder-robbery, the State must prove beyond a reasonable doubt one, a robbery in the first degree or an attempt thereof as defined by Section 13A-8-41, and I'm going to tell you about that in a moment. Two, a murder as defined by Section 13A-6-2(a)(1), and I'll tell you about murder in a minute. And three, that the murder was committed during the robbery or attempted robbery, that is, that the murder was committed in the course of or in connection with the commission of or in immediate flight from the commission of the robbery or attempted robbery in the first degree. Those are the three elements that the State must prove beyond a reasonable doubt for the defendant to be guilty of the capital murder-robbery. . . .
". . . .
 "One of the other elements [of capital murder-robbery] is murder. And murder is defined in our Code Section and in the State of Alabama under Section 13A-6-2(a)(1), and that simply says this. A person commits the crime of murder if with intent to cause the death of another person he causes the death of that person or of another person, or he commits or attempts to commit robbery in any degree and in the course of and in furtherance of the crime that he is committing or attempting to commit he or another participant if there be any causes the death o[f] any person.
[sic]. Now, that's murder defined under our statutes.
 "Now, you heard me use the word intent. Intention in regard to murder would mean that a person acted intentionally with respect to a particular result, that is, death. . . . So, the intent in murder means that state of mind that mental state in the mind [sic] of a person intending death at the time of the enterprise and the action resulting in death. . . .
 "Now, . . . to sum up the capital murder charge. To sustain a conviction under subsection (a)(2) title 13A-5-40, under the section for capital murder robbery, the State must prove beyond a reasonable doubt one, a robbery in the first degree or an attempt thereof as I have defined that to you under our applicable law being section 13A-8-41. Two, a murder as I defined it to you under our law section 13A-6-2(a)(1) and three, that the murder was committed during the robbery or attempted robbery, that is that the murder was committed during the course of or in connection with the commission of or in immediate flight from the commission of the robbery or attempted robbery in the first degree.
". . . .
 ". . . There could be a lesser included offense here of murder. There could be a lesser included offense of robbery in the first degree. Now, you're going to have to bear with me because I'm going to have to say the same thing that I just said, except it's a lesser included offense.
 ". . . A person commits the crime of murder, and I'm talking about a lesser included offense if you ladies and gentlemen determine that there is a lesser included offense. A person commits the crime of murder if with intent to cause *Page 1292 the death of another person he causes the death of that person or another person. Or he commits or attempts to commit robbery in any degree and in the course of and in furtherance of the crime that he is committing he or another participant, if there be any, causes the death of any person.
 "Now, you've got — that would constitute the crime of murder.
 "Now, you would also, at that point consider the intent, consider what I said about that. [The trial court then repeated the instructions on intent quoted above]." (Emphasis added.)
Nowhere in his instructions did the trial court charge the jury that in order to find the defendant guilty of the capital offense charged in the indictment, the jury had to find that the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the robbery.
"[I]n a prosecution for a capital offense, the felony-murder doctrine has no place in securing a conviction of the offense charged, Alabama Code 1975, § 13A-5-40(c); Ex parte Ritter,375 So.2d 270, 273-75 (Ala. 1979), vacated on other grounds, Ritterv. Alabama, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1133
(1980)." Connolly v. State, 500 So.2d 57, 62 (Ala.Cr.App. 1985), affirmed, 500 So.2d 68 (Ala. 1986). "A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense . . . unless that defendant is legally accountable for the murder because of complicity in the murder itself under the provisions of section13A-2-23 [defining complicity], in addition to being guilty of the other elements of the capital offense. . . ." Ala. Code 1975, § 13A-5-40(c).
 "We have previously held that, while the legislature has prohibited the use of the felony-murder rule to supply the necessary intent in capital felony trials, the accomplice liability doctrine may be used to convict a non-triggerman accomplice if, but only if, the defendant was an accomplice in the intentional killing as opposed to being an accomplice merely in the underlying felony. Ritter v. State, 375 So.2d 270 (Ala. 1979). An accomplice to the intentional killing is one who aids and abets the killing by any assistance rendered through 'acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.' Id. at 274.
". . . .
 "To affirm a finding of a 'particularized intent to kill,' the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill."
Ex parte Raines, 429 So.2d 1111, 1112-13 (Ala. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983). See also Watkins v. State, 495 So.2d 92, 101-103 (Ala.Cr.App. 1986); Waldrop v. State, 462 So.2d 1021, 1029-30 (Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483,87 L.Ed.2d 618 (1985); Womack v. State, 435 So.2d 754, 762-63
(Ala.Cr.App.), affirmed, 435 So.2d 766 (Ala.), cert. denied,464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983); Evans v.State, 361 So.2d 666, 667 (Ala. 1978), cert. denied,440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). " '[N]o defendant is guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony murder doctrine.' " Lewis v. State, 456 So.2d 413, 416 (Ala.Cr.App. 1984). See also Thomas v. State, 452 So.2d 899, 903
(Ala.Cr.App. 1984) ("An oral instruction on subsection (3) felony-murder constitutes a fatal variance from an indictment charging subsection (1) intentional murder unless felony-murder can be deemed a lesser-included offense of intentional murder," which is not possible under Alabama's statutory scheme.).
A comparison of the charge given in this case with portions of the pattern jury instructions recommended by the Alabama Supreme Court reveals the glaring deficiencies *Page 1293 
of the jury instructions of the trial court.
 "[I]f you find that a murder of the intentional killing type of [the victim] was committed by some person . . . other than the defendant, the defendant is guilty of that intentional killing type of murder if, but only if, you find beyond a reasonable doubt either that the defendant intentionally procured, induced or caused the other person . . . to commit the murder, or that the defendant intentionally aided or abetted the other person's . . . commission of the murder. Only if you are convinced beyond a reasonable doubt that either or both of those situations exist as a fact can you find the defendant guilty of an intentional killing murder which he did not personally commit himself. A defendant who is guilty of the crime of murder of the intentional killing type because of these principles has committed that crime the same as if he had personally done the killing himself.
". . . .
 "A defendant commits the crime of murder of the intentional killing type if with intent to cause the death of another person, he causes the death of that person or another person. A person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or to engage in that conduct. The defendant must intentionally, as opposed to negligently, accidentally or recklessly, cause the death of the deceased in order to invoke the capital statute. The fact that someone dies or is killed during the course of a robbery does not automatically provide that intent. The intent to kill must be real and specific in order to invoke the capital statute."
Alabama Bar Institute for Continuing Legal Education,Proposed Pattern Jury Instructions for Use in the Guilt Stateof Capital Cases Tried Under Act No. 81-178, pp. 4-5, 15, approved and "recommended" by the Alabama Supreme Court December 6, 1982 (emphasis added). See Ex parte Harrell,470 So.2d 1309, 1314 (Ala.), cert. denied, 474 U.S. 935,106 S.Ct. 269, 88 L.Ed.2d 276 (1985), wherein the Alabama Supreme Court declined to find plain error for two reasons, one of which was because "[t]he trial court's instruction follows the pattern jury instruction 'recommended' by this Court. . . ."
In Bui v. State, 551 So.2d 1094, 1115-17 (Ala.Cr.App. 1988), affirmed, 551 So.2d 1125 (Ala. 1989), this Court found no plain error where the trial court included both reckless murder and felony murder in its definition of murder in defining a capital offense, where 1) the trial court further instructed the jury that only portions of the definition of murder would apply to the case and then recharged the jury, defining the specific crime of intentional murder involved in the case and omitting the inapplicable subdivisions previously given, and 2) there was absolutely no evidence in the record that the murders were committed by reckless conduct or in the commission of a felony. Such distinctions are not present in this case.
Furthermore, we find the instructions of the trial court highly confusing because of the failure to clearly distinguish the intent element in the crimes of capital murder, felony-murder, and murder in connection with the doctrine of accomplice liability. While there was no objection at trial, this " 'error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' " Ex parte Womack, 435 So.2d at 769. Under Rule 45A, A.R.App.P., "such error has or probably has adversely affected the substantial right of the appellant." Under the facts and circumstances of this case, we have no choice but to hold that the instructions of the trial court constitute plain error requiring the reversal of the conviction.
 II.
The defendant's trial was held on March 7 and 8, 1989. The defendant, who represented himself, declined to ask the *Page 1294 
jury venire any qualifying questions and refused to participate in striking a jury stating: "It doesn't really make any difference to me. I am not striking any at all." Upon further explanation and questioning by the trial judge, the defendant stated, "Okay. Listen at this clearly. I am not striking at all. Final." The trial judge then ordered the circuit clerk "to sit down at the counsel table and strike the defendant's strikes for him."
Alabama Code 1975, § 12-16-100, provides in pertinent part: "If any defendant shall refuse to exercise a strike to which he is entitled, then the judge presiding shall exercise that defendant's strike for him." (Emphasis added.) See Zeigler v.State, 443 So.2d 1303, 1305, n. 1 (Ala.Cr.App. 1983). We have been cited to no authority granting a trial judge the power to delegate this authority to any other court official. "The right of peremptory challenge in trials by jury is purely statutory, and, in the absence of statute conferring such right, it does not exist." Sorter v. Austen, 221 Ala. 481, 482, 129 So. 51, 52
(1930).
 "Generally speaking, peremptory challenges arise from the exercise of a privilege granted by the legislative authority. They are allowed by legislatures as an act of grace, rest entirely within the discretion of legislatures, can be exercised as a matter of right only to the extent allowed by statute, and must be taken subject to the legislative limitations placed upon the manner of their exercise."
47 Am.Jur.2d Jury, § 234 (1969) (footnotes omitted). "There is hardly a more critical stage of trial than the process of striking a jury." Ford v. State, 356 So.2d 720, 722
(Ala.Cr.App.), cert. denied, 356 So.2d 723 (Ala. 1978). Where the defendant represents himself without the benefit of counsel and refuses to strike a jury, only the trial judge can exercise the defendant's strikes. We note this error in the trial judge's delegation of this authority to the clerk merely should this issue arise in the event of a retrial. We do not hold that this particular error, under the circumstances of this case, constitutes plain error.
 III.
The defendant waived his right to appointed counsel and represented himself at trial. However, he refused to participate in his trial. He did not ask the jury venire any qualifying questions and refused to strike a jury. He made no opening comments and no closing arguments at either the guilt or the penalty phase of the trial. He presented no evidence on his behalf and refused to cross-examine any witness. Throughout the proceedings he made no objection.
On oral argument of this appeal, the defendant's appellate counsel[2] argued that there had been a "total breakdown of the judicial system" in this case. Using those same words, the assistant attorney general candidly admitted such, but maintained that the "breakdown" was the defendant's own fault. We agree that a "breakdown" did occur and that the defendant did not receive a fair trial.
In order to prevent a recurrence of such a breakdown, we strongly recommend, although we do not require, that a trial court undertake a "thorough inquiry" similar to the type set out in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316,92 L.Ed. 309 (1948), in determining whether a defendant's waiver of counsel is intelligent and knowing.[3] In this case, the two circuit *Page 1295 
judges involved made significant efforts in making a determination that the defendant had waived his right to counsel. Although we make no evaluation of the sufficiency of those determinations that the defendant's waiver of counsel was intelligent and knowing, we do make the following observations.
At trial, the defendant did not admit indigency and maintained that he had "relatives [he could] get the funds from." The criteria for determining indigency are set out in Ala. Code 1975, § 15-12-5(b). The assets of "friends and relatives" are not included within that subsection. This is in accord with the general rule that "the earnings or property of various persons other than the accused, but in some way related to him, [should] not be considered in determining his indigency, the test being the personal means of the accused." Annot., 51 A.L.R.3d 1108, § 4 (1973). "[T]he court must look only to the defendant's own earnings and assets, disregarding the potential assistance of friends and relatives who have no obligation to support the defendant." 2 W. LaFave and J. Israel, Criminal Procedure § 11.2(e) at 28 (1984).
In making a determination that a defendant's waiver of counsel is intelligent and knowing, the trial court should include a finding that the defendant has the mental competence and intelligence to make such a waiver. In the event a defendant refuses to cooperate in the trial court's waiver of counsel investigation or in the event the defendant refuses to participate in the trial, the trial court, before continuing with the trial, should make a determination on the record that, in the opinion of the court, the defendant is either deliberately, knowingly, and intentionally attempting to obstruct or hinder the judicial process and the prosecution in that particular case, or that the defendant is deliberately, knowingly, and intentionally refusing to participate in the trial, if such be the case. These determinations assume a prior determination by the trial court that the defendant is mentally competent to stand trial and to make a valid waiver of counsel.
Especially in the prosecution of a capital offense, a trial court should also give consideration to the appointment of standby counsel to represent a defendant who elects to waive counsel and then elects to not participate in the trial. SeeFord v. State, 515 So.2d 34, 40-44 (Ala.Cr.App. 1986), affirmed, 515 So.2d 48, 51-52 (Ala. 1987), cert. denied,484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988).
 " '[T]he trial court has a continuing responsibility to watch over the defendant and insure that his incompetence is not allowed to substitute for the obligation of the state to prove its case. If, during the course of the trial, it becomes apparent that the defendant is simply incapable, because of an inability to communicate or because of a complete lack of understanding, to present a defense that is at least prima facie valid, the trial court should step in and assign counsel. But because the defendant is not to be granted a second chance simply because the first is going badly, counsel should be appointed after trial has begun, or a mistrial ordered, only where it appears *Page 1296 the defendant should not have been allowed to proceed pro se in the first place.' [Pickens v. State], 96 Wis.2d [549] at 568, 292 N.W.2d [601] at 611 [(1980)] (emphasis added)."
Washington v. State, 539 So.2d 1089, 1094 (Ala.Cr.App. 1988).
A number of other significant and troubling issues have been raised on appeal. However, because this conviction must be reversed for the reason stated above, we express no judgment on those remaining issues. The judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] Starks, the Greys, and Adams were all charged with capital murder. Starks was convicted and sentenced to death. See Starksv. State, 4 Div. 381, presently awaiting the filing of briefs and submission in this court. Stacey Grey, the driver of the "get-away" car, pleaded guilty to murder and was sentenced to 25 years' imprisonment. Ronald Grey and Adams pleaded guilty to murder in exchange for a sentence of life imprisonment.
[2] The record does not show how appellate counsel came to represent the defendant. There is no order of appointment contained in the record on appeal.
[3] In Von Moltke v. Gillies, 332 U.S. at 723-24, 68 S.Ct. at 323, Justice Black, writing for a plurality of the United States Supreme Court stated:
 "We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." (Footnotes omitted.)
See also 2 W. LaFave and J. Israel, Criminal Procedure § 11.3(b) (1984); Annot., 98 A.L.R.3d 13 (1980).