[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 189 
The appellant, Henry Starks, was indicted and convicted for the capital offense of murder during a robbery, as defined in Ala. Code 1975, § 13A-5-40(a)(2). At the penalty stage, the jury, by a vote of eight to four, recommended imprisonment for life without possibility of parole. The trial judge declined to accept this recommendation and sentenced the appellant to death.
On the evening of March 17, 1988, Gerald Benton was robbed and killed at his place of business, Tri-County Grocery, in Pike County, Alabama. The pathologist testified that Benton's death was caused by "multiple blunt force injuries to the back of the head and massive damage to the brain." Five young men were indicted for the capital murder of Benton. Only two of the five, the appellant and his uncle, Willie Louis Russaw, were actually tried for the capital offense. The other three, Timmy Adams, Ronald Grey, and Stacey Grey, agreed to testify against the appellant and Russaw in exchange for a reduction in the charges against them. (See Part III below.)
Adams testified at the appellant's trial that the five men went to Benton's store with the avowed intention "to steal something." Adams, Ronald Grey, Russaw, and the appellant went up to the store, while Stacey Grey remained in the car. According to Adams, the appellant entered the store first, then "Willie [Russaw] ran in and went around the counter and throwed Mr. Benton down on a sack of potatoes." The appellant then "went to the corner and *Page 190 
got an ax handle" with which he hit Benton. Adams stated on cross-examination that he saw the appellant hit Benton only once.
Ronald Grey testified that he heard a "racket" after the others[1] had entered the store. He then looked through the glass door and saw Benton lying on the floor. The appellant was standing over Benton with an ax handle in his hand, but Ronald did not see him strike Benton with it. Both Adams and Ronald testified that the appellant left the store with the ax handle. Both witnesses also testified that Russaw brought to the car a money bag or pouch belonging to Benton[2] and the ax.
The appellant did not testify at trial, although he did present an alibi defense through the testimony of others.
 I
The appellant raises two issues in which he contends that the trial court committed plain error in charging the jury during the guilt phase of his trial. He argues that the trial court (1) failed to properly instruct the jury on the intent required to convict him of capital murder and (2) inadequately instructed the jury on the lesser included offenses of intentional noncapital murder and felony murder. Because these issues are interwoven, we will discuss them together.
During the charge conference, the trial judge stated that he would give the appellant's requested charge number 6.[3] The prosecutor objected to this requested charge and the following occurred:
 "THE COURT: Number 6 just defines in the first paragraph is murder [sic]. Simple statement of what the Code says. The second paragraph is a statement of felony murder, I believe. I believe that is where you are coming from.
"MR. MAGEE [defense counsel]: Yes, Your Honor.
 "THE COURT: Felony murder: A person who causes the death of another person while in the attempt to, the commission of, or immediate flight from a heinous offense seriously dangerous to the life of another.
 "So you see that could be applicable if they don't find [the defendant] guilty of aggravated murder.
Is that where you are coming from, Mr. Magee?
"MR. MAGEE: Yes, Your Honor."
R. 981-83 (emphasis added).
There was no further discussion of requested charge number 6 per se. However, at the end of the charge conference, the following occurred:
 "THE COURT: And I am going to fix in my own handwriting, if it is all right with you all, the possible forms of verdict. We, the jury, find the defendant not guilty, which will be explained to them that if they don't believe the evidence beyond a reasonable doubt that the defendant is guilty of aggravated murder as alleged or any lesser included offense of murder, then that verdict would be apropos. Also, we, the jury, find the defendant guilty of aggravated murder as charged in the indictment; or we, the jury, find the defendant guilty of the lesser included offense of murder.
 "That's about all I can do. And as we discussed yesterday, since you all's approach has been alibi, I was elsewhere, I did not commit, then there is no lesser [included] charge on manslaughter or criminal negligent homicide. So we are locked in with just two possible offenses or not guilty.
"Do you all agree or disagree?
"MR. SMITH [prosecutor]: We agree, Your Honor. *Page 191 
"MR. WILLIAMS [defense counsel]: Yes, sir.
". . . .
 "MR. WILLIAMS: Can I ask a point about what you were just saying about we are locked into two?
"THE COURT: We are locked into two offenses.
 "MR. WILLIAMS: Two offenses, okay. Not two verdicts.
 "THE COURT: Aggravated murder or a lesser offense of murder.
"MR. WILLIAMS: Or not guilty.
 "THE COURT: Or not guilty. We have got a good understanding. . . ."
R. 990-91 (emphasis added).
In charging the jury, the trial judge made a few introductory remarks, then read the indictment. After informing the jury that the appellant pleaded not guilty to this indictment and that a capital offense is one for which the defendant is to be punished by death or by imprisonment for life without parole, the trial judge stated:
 "The defendant is charged with the following capital offense, murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant. The elements of capital murder charged in this indictment are in substance: In order to sustain a conviction under the subsection that I have read to you from capital murder-robbery, the State must prove beyond a reasonable doubt: 1. A robbery in the first degree or an attempt thereof as will be defined to you. 2. A murder as will be defined to you, and that the murder was committed during the robbery or attempted robbery, meaning that the murder was committed in the course of or in the connection with the commission of or in the immediate flight from the commission of the robbery or attempted robbery in the first degree.
 "The words we have just used to you indicate what must be proven, and in any homicide case of which robbery-aggravated murder, as we have said to you, the State to prove the corpus delicti of the offense beyond a reasonable doubt [sic]. To establish the corpus delicti, the elements that we have read to you, it is incumbent upon the State to prove beyond a reasonable doubt facts and circumstances that the death of Benton has occurred, which we have referred to as the corpus, and the death of [a] human being was caused by the criminal agency, i.e., the delicti of some person, namely, the defendant as alleged in the indictment." (Emphasis added.)
R. 1034-35.
Immediately thereafter, the trial judge charged the jury on the general legal principles applicable in criminal cases, such as the presumption of innocence, expert testimony, circumstantial evidence, the burden of proof, and reasonable doubt. The trial court then stated:
 "As we have said, this defendant is charged with the capital offense as defined, one which would allow punishment by a sentence of death or life imprisonment without parole. And it is charged in the indictment in substance, murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.
 "We are going to discuss with you the nature of those terms. First, we are going to define to you what murder is. Then we are going to what robbery in the first degree is and an attempt.
 "Murder in this state is defined as this: A person commits the crime of murder if with intent to cause the death of another person he causes the death of that person. That's a few words, but it is the definition of murder.
 "And again, we further elaborate by saying a person commits the crime of murder if he causes the death of another person and in performing the act or acts which caused the death of the person, he intends to kill that person; or if he commits or attempts to commit robbery and in the course of and in the furtherance of that crime that he is committing or attempting to commit, or in the immediate flight therefrom, he or another participant causes the death of any person. *Page 192 
 "In this case there is one count contained in the indictment charging the defendant with the offense of murder occurring in the commission or attempted commission of a dangerous felony. You must consider the evidence as to the charge, and determine whether the defendant has been proved guilty of the offense charged beyond a reasonable doubt. If you find from your consideration of all the evidence that the State has proved each of the necessary elements of the offense charged beyond a reasonable doubt, then your verdict should be that you find the defendant guilty of the offense of murder occurring in the commission or attempted commission of a dangerous felony as charged in the indictment.
 "If, on the other hand, from your consideration of the evidence, or the lack of evidence, you are not convinced that the State has proved each of the essential elements of the offense of murder occurring in the commission or attempted commission of a dangerous felony beyond a reasonable doubt, then you must find the defendant not guilty of the offense of murder occurring in the commission or attempted commission of a dangerous felony.
 "Embraced within the offense of murder occurring in the commission or attempted commission of a dangerous felony, charged in the indictment is the lesser included offense of murder. If after your consideration of the evidence or lack of evidence you are not satisfied that the defendant is guilty of the principal offense of murder occurring in the commission or attempted commission of a dangerous felony, as charged in the indictment, you must next consider the evidence as to the lesser included offense of murder and determine whether the defendant has been proved guilty of such lesser included offense beyond a reasonable doubt. If you find from your consideration of all of the evidence, that the State has proved each of the necessary elements of the lesser included offense of murder beyond a reasonable doubt, then your verdict should be that you find the defendant guilty of the offense of murder as embraced within the charge contained in the indictment.
 "If, on the other hand, from your consideration of the evidence, or the lack of evidence, you are not convinced that the State has proved each of the essential elements of the offense of murder beyond a reasonable doubt, then you must find the defendant not guilty of the offense of murder as embraced within the charge contained in the indictment.
 "Those remarks there, ladies and gentlemen, indicated there is a possibility, dependent upon how you view the evidence and your conclusions, that a lesser included offense may be embraced. Whether there is or not is up to you, and the evidence, and the law, and that is your decision process.
 "You may not find the defendant guilty of any offense other than the one charged in the indictment or any lesser included offense thereof about which you have been instructed.
 "Since a defendant may be convicted of a lesser offense which is included in the offense charged, I shall define to you the term 'lesser included offense.'
 "An offense is a lesser included offense if it is established by the proof of the same or fewer than all the facts required to establish the commission of the offense charged, or the offense is specifically design[at]ed by statute as a lesser degree of the offense charged or the offense differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person or property of a lesser kind of culpability suffices to establish its commission.
 "So, ladies and gentlemen of the jury, this defendant, as we have [alluded] to, is not only charged with murder with the intent to cause the death of the person that you have heard mentioned, Benton, and he caused that death, but with aggravation for the murder was committed intentionally while in the course of the commission or the attempt to commit or *Page 193 
in the immediate flight therefrom a robbery.
 "The word that we have used just then, 'intentionally,' has been defined by the Alabama Criminal Code, 'intentionally' as: where a person acts intentionally with the respect to a result or to conduct prescribed by statute defining an offense when its purpose is to cause that result or to engage in that conduct.
 "Another way we could say intention is this: A person acts voluntarily, he performs acts consciously, as the result of effort and determination.
 "So, was the death of Benton intentional, was it voluntary on the part of the defendant, was it performed consciously as a result of effort and determination?"
R. 1041-45 (emphasis added). The judge then defined "attempt," "dangerous instrument," and "robbery," and discussed the concepts of alibi, complicity, corroboration of accomplice testimony, and the requirement of a unanimous verdict.
The appellant was indicted under Ala. Code 1975, §13A-5-40(a)(2), which defines the capital offense of "[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant." Under Alabama law, there are three forms of murder: "intentional murder," defined in § 13A-6-2(a)(1); "reckless murder," defined in §13A-6-2(a)(2); and "felony murder," defined in § 13A-6-2(a)(3). However, the only form of murder that will support a conviction for the capital offense with which the appellant was charged isintentional murder; neither reckless murder nor felony murder will suffice. § 13A-5-40(b); Bui v. State, 551 So.2d 1094, 1115
(Ala.Cr.App. 1988), affirmed, 551 So.2d 1125 (Ala. 1989), vacated on other grounds, ___ U.S. ___, 111 S.Ct. 1613,113 L.Ed.2d 712, remanded on other grounds, [Ms. 87-1423, July 12, 1991], 1991 WL 151548 (Ala. 1991). See also Connolly v. State,500 So.2d 57, 62 (Ala.Cr.App. 1985) (doctrine of felony murder "has no place in securing a conviction" for capital robbery-murder), affirmed, 500 So.2d 68 (Ala. 1986); Daniel v.Thigpen, 742 F. Supp. 1535, 1549 (M.D.Ala. 1990) (reckless murder not sufficient to support a conviction where defendant was charged with the capital offense of murder of a police officer under former § 13A-5-31(a)(5)).
It is clear from the trial judge's remarks at the charge conference that he interpreted the appellant's requested charge number 6 as a request for an instruction on the lesser included offense of felony murder. It also appears, although we cannot say that it is clear, that he interpreted this requested charge as a request for an instruction on the lesser included offense of intentional noncapital murder. In any event, the trial judge agreed to give the requested charge, and it appears from the structure of the oral charge that he was attempting to charge the jury on the lesser included offense of murder in at least the felony murder form. However, our review of the charge as a whole convinces this Court that the charge failed to adequately instruct the jury on "the elements of, and the critical distinction between, the capital offense charged and the alleged lesser included offense of [felony murder]." Beck v.State, 485 So.2d 1203, 1206 (Ala.Cr.App. 1984), affirmed,485 So.2d 1207 (Ala. 1985).
At the beginning of his charge, the trial judge read the indictment, which charged the appellant withintentional murder. Shortly thereafter, however, he discussed the elements of the charged capital offense using only the term "murder." He clearly did not include intent when enumerating the elements of the capital offense and stated that the term "murder" would be defined later. Subsequently, when he did define the term "murder," he used both the intentional form found in § 13A-6-2(a)(1) and the felony murder form found in §13A-6-2(a)(3). Immediately after providing this dual definition of "murder," the trial judge referred to the charged offense of "murder occurring in the commission or attempted commission of a dangerous felony" and then the "lesser included offense ofmurder." (Emphasis added.) The trial judge never instructed the jury that, in order to convict the appellant of the capital offense, it must find that he intentionally killed Benton. Furthermore, the trial judge failed to clearly distinguish the elements *Page 194 
of the charged capital offense from those of the lesser included offense of felony murder. Compare Freeman v. State,555 So.2d 196, 208 (Ala.Cr.App. 1988) ("the trial judge extensively instructed the jury on the difference between capital murder, felony murder, and intentional murder"), affirmed, 555 So.2d 215 (Ala. 1989), cert. denied,496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990); Davis v. State,440 So.2d 1191, 1194 (Ala.Cr.App. 1983) (trial court instructed jury on "the intent required for a capital felony, on the felony murder doctrine, and on the distinction between the intent required for a capital felony and the intent required for the lesser included offense of noncapital murder"), cert. denied, 465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984);Womack v. State, 435 So.2d 754, 763 (Ala.Cr.App.) ("[t]he jury was given proper instructions on the 'intent to kill requirement' " where trial court "made it clear to the jury that the felony murder doctrine was relevant only to the lesser included offense of noncapital murder, and that there could be no conviction for the capital offense absent a finding beyond a reasonable doubt that the appellant possessed the intent to kill"), affirmed, 435 So.2d 766 (Ala.), cert. denied,464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). We note that a similar deficiency required the reversal of codefendant Russaw's capital murder conviction. Russaw v. State,572 So.2d 1288, 1292-93 (Ala.Cr.App. 1990).
Relying on Bui v. State, 551 So.2d 1094, the State contends that any error occasioned by the inclusion of the felony murder doctrine in the trial court's instructions was harmless. Bui
involved a prosecution for the capital offense defined in §13A-5-40(a)(10), the murder of two or more persons "by one act or pursuant to one scheme or course of conduct." In charging the jury, the trial court defined murder in all three statutory forms: intentional murder, reckless murder, and felony murder.551 So.2d at 1115. Immediately after the trial judge completed his oral charge, the prosecutrix pointed out that "[t]o be capital, [the murder] has to be intentional." Id. at 1116. The trial court then gave a supplemental instruction specifically defining intentional murder. Id.
Bui was accused of slitting the throats of his three children because he was angry at his wife and "didn't want her to get them." Id. at 1098-99. The children were killed in Bui's own home and while under Bui's care. Id. Given those facts, we concluded that the jury was not misled by the reckless murder and felony murder instructions:
 "The indictment charged only intentional murder, the trial court specifically limited the jury to the evidence, and there was no question concerning the other offenses. There is absolutely no evidence in the record that the murders were committed by reckless conduct or in the commission of a felony. There are no facts which could have possibly led the jury to that conclusion. Even if we conclude that the inclusion of the inapplicable portions of the charge, as initially given, was erroneous and misleading, the misleading quality was corrected by the trial court's later instruction. As a whole, the instructions properly presented the case to the jury."
Id. at 1117 (emphasis added).
While we found no plain error in the trial court's oral charge in Bui, we cannot reach the same conclusion in this case. Here, the killing was committed during a felony and the effect of the trial judge's instruction was to permit the jury to convict the appellant of the capital offense "if they found that he either intentionally killed [Benton] or that he . . .caused [Benton's] death in the commission of the robbery."Thomas v. State, 452 So.2d 899, 903 (Ala.Cr.App. 1984) (where defendant was charged in a two-count indictment with intentional noncapital murder and robbery, trial court erred in instructing jury on principle of felony murder) (emphasis in original).
We are unwilling to say that the deficiency in the trial judge's earlier instructions was rectified by the following instructions, given in conjunction with the definition of "intentional":
 "So, ladies and gentlemen of the jury, this defendant, as we have [alluded] to, is not only charged with murder with the *Page 195 
intent to cause the death of the person that you have heard mentioned, Benton, and he caused that death, but with aggravation for the murder was committed intentionally while in the course of the commission or the attempt to commit or in the immediate flight therefrom a robbery.
". . . .
 "So, was the death of Benton intentional, was it voluntary on the part of the defendant, was it performed consciously as a result of effort and determination?"
R-1045. The first quoted paragraph is, at best, confusing and neither it nor the second paragraph can be construed as an adequate instruction on the intent required to support a capital murder conviction.
Therefore, we find that the trial court's instructions, even when considered as a whole, did not sufficiently or adequately explain to the jury the intent required to sustain a capital murder conviction. In addition, we find that the trial judge's instructions failed to properly charge the jury on the lesser included offense. After repeated review of the oral charge of the trial judge, we conclude that the jury could not possibly have comprehended what the elements of the lesser included offense of felony murder were or how those elements differed from the charged capital offense.
The State argues that any error in this regard was harmless because the appellant was not entitled to a charge on any lesser included offenses. However, it is well settled that "[a] defendant is entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that would support the position." Ex parte Oliver, 518 So.2d 705, 706
(Ala. 1987). Accord, Chavers v. State, 361 So.2d 1106, 1107
(Ala. 1978). This is true even where "the defendant denies the charge," Ex parte Pruitt, 457 So.2d 456, 457 (Ala. 1984), and "the evidence supporting the defendant's position is offered by the State." Silvey v. State, 485 So.2d 790, 792 (Ala.Cr.App. 1986). Accord, Ex parte Stork, 475 So.2d 623, 624 (Ala. 1985).
In this case, the killing was committed during what the evidence indicates was a planned robbery. However, as inRussaw, "there was no testimony of any plan to kill the victim." 572 So.2d at 1289. Compare Brown v. State,545 So.2d 106, 109 (Ala.Cr.App. 1988) (evidence of plan to kill), affirmed, 545 So.2d 122 (Ala.), cert. denied, 493 U.S. 900,110 S.Ct. 257, 107 L.Ed.2d 206 (1989). Further, Ronald Grey testified that the appellant had no weapon when he entered the store. Under these circumstances, whether the appellant intended to kill the victim during the commission of a robbery was a question for the jury. See Connolly v. State,500 So.2d at 63; Womack v. State, 435 So.2d at 763. Therefore, the evidence presented by the State would support a conviction for felony murder, which has no intent requirement,[4] as well as a conviction for the charged capital offense. Cf. W. LaFave A. Scott, Criminal Law § 7.5 at 628 (2d ed. 1986) ("if the robber should hit his victim hard with a bludgeon, not intending to kill him but only to facilitate the robbery by disabling him temporarily, but thereby crushing his skull and causing death, the robber would . . . be guilty of felony murder").
 II
The appellant gave an incriminating statement to the police, which essentially mirrored the testimony given by accomplices Timmy Adams and Ronald Grey. Before this statement was introduced at trial, the trial judge, as he is required to do, conducted a suppression hearing outside the presence of the jury. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774,12 L.Ed.2d 908 (1964). At this hearing, Troy Police Chief Grady Reeves testified that on March 23, 1988, at approximately 12:30 a.m., he took a statement from the appellant who was then in custody in the Barbour *Page 196 
County Jail. Chief Reeves stated that, prior to taking this statement, he advised the appellant of his Miranda rights. The appellant was alert and coherent and stated that he understood the rights that Chief Reeves read and explained to him. Chief Reeves also read to the appellant the waiver of rights form and the appellant executed this form, which was then witnessed by Chief Reeves and Pike County Sheriff Harold Anderson.[5] Chief Reeves stated that, while he was present, the appellant was neither threatened nor offered any reward or hope of reward in order to induce him to make a statement.
Defense counsel pointed out that the waiver form bears the time "12:30 p.m." and argued that the statement was inadmissible because the appellant did not waive his rights until some twelve hours after the statement was given. However, upon further questioning by the State, Chief Reeves stated that the "12:30 p.m." written on the waiver form was erroneous and that it should have been "12:30 a.m." Chief Reeves also testified that he was "absolutely positive" that he talked to the appellant shortly after midnight on March 23, 1988; that it was dark outside at the time, which contributed to his writingp.m. on the waiver; and that he was aware prior to trial of the error on the waiver form, but that he "left it as it was." Chief Reeves reiterated that he advised the appellant of his rights and that the appellant signed the waiver form before the statement was taken.
An extrajudicial statement is presumed involuntary and is inadmissible unless the prosecution establishes both that the law enforcement officers involved complied with the requirements of Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the statement was voluntary in that is was not the product of coercion, threats, or offers of reward. Jackson v. State, 562 So.2d 1373, 1380
(Ala.Cr.App. 1990); Bush v. State, 523 So.2d 538, 554
(Ala.Cr.App. 1988). We think that the State met its burden with regard to establishing the proper Miranda predicate. The asserted error in the time on the waiver of rights form should be viewed simply as conflicting evidence. "Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence." Malone v. State, 452 So.2d 1386, 1389
(Ala.Cr.App. 1984). Accord Ex parte Singleton, 465 So.2d 443,445 (Ala. 1985). Under the circumstances of this case, we cannot say that the trial court's ruling of admissibility, insofar as the establishment of the Miranda predicate is concerned, was incorrect.
The appellant also makes much of the fact that his statement was not recorded while the statements of codefendants Timmy Adams, Ronald Grey, and Stacey Grey were recorded. However, assuming the voluntariness of a statement is adequately established, a statement is admissible regardless of whether it was recorded electronically or otherwise. See Beckham v. State,389 So.2d 573, 577 (Ala.Cr.App. 1980). "Any person who was present and heard the statement [may testify] to its content. The unavailability of a tape recording of a confession does not preclude the admission of the oral testimony of a witness to the inculpatory statement." Hawkins v. State, 443 So.2d 1312,1314 (Ala.Cr.App. 1983) (citations omitted).
The fact that the statements of the codefendants were recorded while the appellant's statement was not recorded was clearly a matter which went to the weight of the appellant's statement, and not to its admissibility. See Beckham,389 So.2d at 577. We note that defense counsel cross-examined Chief Reeves on this matter and argued to the jury in closing that the failure to record the appellant's statement should be taken "in consideration when deciding how much weight and credibility you are going to give to this alleged confession." *Page 197 
 III
The appellant asserts that the trial court erred in curtailing his cross-examination of accomplices Timmy Adams and Ronald Grey.
Adams testified on direct examination that he had been charged with capital murder in the death of Benton, but that he would be allowed to plead guilty to murder in return for his testimony against the appellant. He also stated, "[T]hey are going to give me life in prison instead of the chair." R-821. During cross-examination, the following occurred:
 "Q. [By defense counsel:] But they agreed to reduce your charge from capital murder to ordinary murder?
"A. Yes, sir.
 "Q. And what is the most you can get for ordinary murder?
"A. Life.
 "Q. Now, do you know the difference between life and life without parole?
"A. Yes, sir.
 "Q. Now, if you get a life sentence is it your understanding you will be eligible for parole?
"A. Yes, sir.
 "Mr. Smith [assistant district attorney]: Your Honor, I am going to object to that.
"The Court: Sustained."
R. 849-50.
During the direct examination of Ronald Grey, the prosecutor did not inquire as to whether Grey had reached an agreement with the State in return for his testimony. On cross-examination, defense counsel elicited the facts that Grey was, at the time of the trial, charged with capital murder; that he had agreed to testify on behalf of the State in return for this charge being reduced to murder; and that he was expecting to receive a life sentence. When defense counsel asked Grey if he "expect[ed] to be eligible for parole," the prosecutor objected before Grey could reply. The trial court sustained this objection stating, "That is strictly a matter that is not pertinent." Defense counsel then sought to make an offer of proof, which the trial judge prohibited, reiterating, "It is not pertinent for the ladies and gentlemen of the jury to consider."[6] R. 886-87.
As a general rule, whether the defendant currently on trial
is or will be eligible for parole is not a matter for the jury's consideration. See Eaton v. State, 278 Ala. 224, 227,177 So.2d 444, 448 (1965); Garraway v. State, 337 So.2d 1349,1353 (Ala.Cr.App. 1976). However, it is well settled that "a defendant has a right to cross-examine an accomplice as to the nature of any agreement he has with the government or any expectation or hope that he may have that he will be treated leniently in exchange for his cooperation. Davis v. Alaska,415 U.S. 308, 315-16, 94 S.Ct. 1105, 1109-10, 39 L.Ed.2d 347
(1974)." United States v. Barrett, 766 F.2d 609, 614 (1st Cir.) (emphasis added), cert. denied, 474 U.S. 923, 106 S.Ct. 258,88 L.Ed.2d 264 (1985). If the accomplice has entered into a plea bargain agreement with the State, "the full terms of thisagreement must be allowed to be placed before the jury."Dawkins v. State, 494 So.2d 940, 943 (Ala.Cr.App. 1986) (emphasis added). The accomplice's agreement with the State has bearing on his credibility and bias. Id. Additionally, the terms of the agreement provide the jury with an "understand[ing] of the possible motivations of the accomplice as he sits on the stand." State v. Donelson, 302 N.W.2d 125,131 (Iowa 1981), quoted with approval in Dawkins v. State,494 So.2d at 943. Moreover, where, as in this case, the accomplice is a key witness, the trial court has little, if any, discretion to curtail an accused's attempts to show bias or motive on the part of the witness. See Jones v. State,531 So.2d 1251, 1254 (Ala.Cr.App. 1988); Proctor v. State,331 So.2d 828, 830 (Ala.Cr.App. 1976). *Page 198 
The appellant in this case was charged with a capital offense and was facing a possible sentence of death or imprisonment for life without possibility of parole. He was clearly entitled to show that the State's primary witnesses, who had been charged with the same capital offense for which he was being tried, were, in return for their testimony against him, being allowed to plead guilty to reduced charges and that they anticipated receiving prison sentences that carried parole eligibility. Cf.Kuenzel v. State, 577 So.2d 474, 510 (Ala.Cr.App. 1990) (fact that accomplice who testified against capital murder defendant was to receive, for his part in the same crime, a life sentence under which he would be eligible for parole in 7 to 10 years was "a matter of impeachment for the defense"), affirmed,577 So.2d 531 (Ala. 1991). See also Smith v. State, 400 So.2d 956,961 (Fla. 1981) (at defendant's trial for capital murder, his accomplice testified on cross-examination that he was to receive a life sentence and would be eligible for parole in 25 years); Patterson v. McCarthy, 581 F.2d 220, 221 (9th Cir. 1978) (trial court erred in refusing to permit accused to cross-examine key witness as to his parole status). Additionally, we note that the trial judge committed error in refusing to allow defense counsel to make his offer of proof.Hines v. State, 384 So.2d 1171, 1183 (Ala.Cr.App.), cert. denied, 384 So.2d 1184 (Ala. 1980).
 IV
Attorney John B. Crawley was the foreman of the grand jury that returned the indictment against the appellant. Crawley was the law partner of attorney Larry C. Jarrell, who served as the foreman of the petit jury which convicted the appellant. Furthermore, Jarrell was initially appointed to represent one of the other defendants charged with this offense. It appears that Jarrell was appointed to represent either Terry Adams, Ronald Grey, or Stacey Grey, all of whom testified against theappellant at trial.
These facts raise troublesome issues which deeply concern this Court. Although it is highly unlikely that Jarrell will serve on the jury should the appellant be retried, on any retrial, all the facts surrounding Jarrell's representation of the codefendant and Crawley's role as foreman of the grand jury should be fully explored and placed on the record.
This cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] Adams testified that he never went into the store but merely watched from the glass door. However, Ronald Grey testified that Adams entered the store with the appellant and that Russaw then "put his hand up over his head and ran into the store with his head down."
[2] This was essentially the same testimony given by Adams and Ronald Grey at Russaw's trial. See Russaw v. State,572 So.2d 1288, 1289 (Ala.Cr.App. 1990).
[3] Although the appellant apparently submitted a number of written requested jury charges, those charges are not contained in the record before this Court.
[4] Our felony murder statute, Ala. Code 1975, § 13A-6-2(a)(3), provides that "[a] person commits the crime of murder if . . . [h]e commits or attempts to commit . . . robbery in any degree . . . and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
[5] Although Sheriff Anderson testified for the State at the appellant's trial, his testimony was not offered with regard to the appellant's statement.
[6] Stacey Grey, the driver of the "get-away" car, testified on direct examination that he had been charged with capital murder in the death of Benton but that, in return for his testimony against the appellant, he would be allowed to plead guilty to murder and would be sentenced to 25 years' imprisonment. Defense counsel did not question Stacey about his eligibility for parole.