The defendant, James Randall Sanders, was convicted of robbery in the first degree and was sentenced to life in prison without the possibility of parole, pursuant to the Habitual Felony Offender Act. The Court of Criminal Appeals affirmed the conviction, with an unpublished memorandum. 602 So.2d 1232.
This Court granted certiorari review in order to determine whether an indigent defendant, for whom a third party has retained legal counsel, has a right to funds for expert assistance when the need for that assistance and its relevance to the defense theory is shown; and, if so, whether the defendant showed that need and relevance.
On June 26, 1987, a Coffee County sheriff's deputy responded to a telephone call about an abandoned automobile. The deputy saw a Lincoln Continental parked approximately 50 to 75 feet from the road. The deputy saw no one inside the car or anywhere near it. He checked the license plate on the car with the police computer in order to find the owner; however, the license plate number was "not in the computer's file." The deputy then looked inside the car for identification. He found a *Page 1200 
car rental agreement, which stated that J. Randall Anderson had leased the car (as lessee). The deputy then called for a tow truck to move the car. The deputy left the area where the car was located, in order to meet the tow truck driver. The deputy led the tow truck to the location of the car. When the deputy arrived at the scene, he saw the defendant placing a briefcase inside the car. He asked the defendant for identification. The defendant showed the deputy a Florida driver's license with the name J. Randall Sanders on it.
At this time, another deputy arrived on the scene. The second deputy questioned the defendant, and the defendant showed him a florida driver's license with the name David Sanderson. The deputies searched the defendant and the car. The defendant consented to a search of his briefcase, which contained a variety of diamond jewelry the defendant claimed was related to his work. The deputies found a shoulder holster and some .45 caliber ammunition in the trunk. The defendant stated that he did not have a .45 caliber gun. The defendant agreed to go to the sheriff's station with one of the deputies.
On the way to the station, the deputy claimed, the defendant fired a gun from the back seat of the car. He claimed that the defendant told him to get out of the car, and that he did so. The defendant then left in the deputy's car. The car was later found abandoned. On June 27, 1987, an investigator from the sheriff's office removed a bullet from the dashboard of the deputy's car.
According to the defendant, he told the deputy that he would pay him $900 if the deputy would release him. The defendant claims that the deputy said that he would tell the sheriff that the defendant pulled a gun on him and forced him out of the car. The defendant said that he drove the deputy's car a few miles and then abandoned it.
The defendant was indicted by the grand jury on August 26, 1987, for robbery in the first degree, in violation of §13A-8-41, Ala. Code 1975. The defendant was later charged with kidnapping in the second degree. The State issued arrest warrants for the defendant.
On August 17, 1988, the defendant was arrested in Houston, Texas, by FBI agents for interstate flight to avoid prosecution of charges in Alabama. A .45 caliber gun was found on the defendant. The defendant filed a request for disposition of the detainer lodged against him based on the charges. On January 5, 1990, the defendant was arraigned in Alabama. At the arraignment, he was found to be indigent and the court appointed counsel to represent him. Two weeks later, the defendant's family retained counsel to represent him and appointed counsel withdrew.
Prior to trial, the defendant asked the court to approve funds for an expert to examine the dashboard in order to determine whether the bullet could have gone through the dashboard and still maintained its shape. The trial court denied the motion, stating, "[Y]ou have got retained counsel, and I am not going to provide funds to do that. There is nothing to examine. The dashboard, I understand, has been destroyed." (R.T.Supp. p. 19.) The jury found the defendant guilty of robbery in the first degree, but was unable to reach a verdict on the kidnapping charge.
Section 15-12-1 defines an indigent defendant "[a]ny person involved in a criminal or juvenile proceeding in the trial or appellate courts of the state for which proceeding representation by counsel is constitutionally required and who under oath or affirmation states that he is unable to pay for his defense and who is found by the court to be financially unable to pay for his defense." Section 15-12-21(d) provides that "Counsel [appointed to defend an indigent defendant] shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court. . . ."
We note that the defendant had already shown to the trial court that he was indigent; therefore, the only issue before us are whether this indigent defendant had a right to public funds to hire an expert when he was represented by counsel retained by a third party and whether the defendant had shown the need and relevance for the expert assistance. *Page 1201 
The criteria for determining indigency are set out in §15-12-5(b):
 "In determining indigency, the judge shall recognize ability to pay as a variable depending on the nature, extent and liquidity of assets, the disposable net income of the defendant, the nature of the offense, the effort and skill required to gather pertinent information and the length and complexity of the proceedings."
We agree with the holding of the Court of Criminal Appeals inRussaw v. State, 572 So.2d 1288 (Ala.Cr.App. 1990), that the assets of friends and relatives, not legally responsible for the defendant, are not included within the "assets" referred to in § 15-12-5(b).
 "This is in accord with the general rule that 'the earnings or property of various persons other than the accused, but in some way related to him, [should] not be considered in determining his indigency, the test being the personal means of the accused.' Annot., 51 A.L.R.3d 1108, § 4 (1973). '[T]he court must look only to the defendant's own earnings and assets, disregarding the potential assistance of friends and relatives who have no obligation to support the defendant.' 2 W. LaFave and J. Israel, Criminal Procedure § 11.2(e) at 28 (1984)."
572 So.2d at 1295.
If the assets of friends and relatives who are not legally responsible for the defendant are not included in determining a defendant's indigency, then the fact that a friend or relative pays for an indigent defendant's counsel should not be considered in determining whether the defendant is entitled to funds for expert assistance. The simple fact that the defendant's family, with no legal duty to do so, retained counsel for the defendant, does not bar the defendant from obtaining funds for expert assistance when the defendant shows that the expert assistance is necessary.
The fundamental rule in construing statutes is to give effect to the intent of the legislature in enacting the statute; the intent is gathered from the language of the statute itself, but reason and necessity for the statute are also relevant.McClain v. Birmingham Coca-Cola Bottling Co.,578 So.2d 1299 (Ala. 1991).
Looking at the statute, we agree that the legislature intended for the trial court, in determining indigency, to consider only the assets of those persons legally responsible for the defendant. This is consistent with the purpose of establishing the indigent defense system in Alabama, which is to provide indigent defendants with their constitutionally guaranteed right to adequate representation.
We must now look to the specific facts of this case and determine whether the defendant showed that the expert testimony was indeed necessary and relevant to his defense. The defendant requested payment for the cost of having an expert examine the dashboard to determine "if in his opinion . . . the bullet [could go] through what the State is contending it went through and still be in the shape it's in." (R.T. p. 19 supp.)
 "The threshold question requires the showing of a need for the requested services. Ex parte Argo, 42 Ala. App. 546, 547, 171 So.2d 259
(1965). We recognized in Gwin v. State, 425 So.2d 500, 508 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983), that before determining whether fundamental fairness requires that an accused be afforded the opportunity to have an expert of his choosing examine a piece of 'critical evidence whose nature is subject to varying expert opinion,' it should first be determined that the evidence is 'critical.' Evidence is 'critical' for purposes of the due process clause if it could induce a reasonable doubt in the minds of enough jurors to avoid a conviction when that evidence was developed by skilled counsel and experts. White v. Maggio, 556 F.2d 1352, 1357-58 (5th Cir. 1977); Gwin, supra."
Grayson v. State, 479 So.2d 69, 72 (Ala.Cr.App. 1984), affirmed, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
The record indicates that the dashboard no longer exists. Although the defendant argues that he requested a ballistics expert to examine only the bullet, it is clear from *Page 1202 
the record that the expert was requested for the purposes of examining the dashboard in order to determine "if in his opinion . . . the bullet [could go] through what the State is contending it went through and still be in the shape it's in." (R.T.Supp. p. 19.) During the conversation with the trial judge concerning the expert, the defendant repeatedly referred to examining the dashboard. (R.T.Supp. p. 18-20.) It is unclear from the record whether the trial court denied the request for funds because the defendant was indigent or because the dashboard no longer existed. It would have been error to deny the request because the defendant was indigent; however, such an error would have been harmless, because the defendant specifically requested an expert for the purpose of examining an object that no longer existed.
Based on the foregoing, we affirm. All other issues presented by the defendant are without merit.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.