270 So.2d 836

**Willie James JEMISON**

**v.**

**STATE.**

**6 Div. 350.**

Court of Criminal Appeals of Alabama.

Dec. 19, 1972.

William J. Baxley, Atty. Gen., and Robert S. Lamar, Jr., Sp. Asst. Atty. Gen., for the State.

Roger C. Williams, Tuscaloosa, for appellant.

HARALSON, Supernumerary Circuit Judge.

This appeal is from a conviction for rape, with sentence fixed at ten (10) years imprisonment.

Briefly, the state's evidence tended to show that on the night of July 1, 1971, somewhere between 9:45 and 10:30 P.M., this prosecutrix was driving an automobile from her home to her husband's restaurant, when she stopped at a traffic light at a street intersection in Tuscaloosa; that a

Negro man suddenly opened the door on the passenger side of the car, got in and forced her to drive him, first toward home on his pretext of getting out, and failing in that he forced her to drive him to a spot used as a picnic area several blocks away, where she was told she would be hurt if she did not do what he said; that at this time and place she was forced to partly disrobe and was raped; that she was then forced to drive her attacker back to Thomas Street, where he got out; that she then called her husband who took her to the police station where the matter was reported and she was later examined by a doctor, who confirmed that she had recently been engaged in sexual intercourse.

The next night the appellant, at the request of police officers of Tuscaloosa, accompanied them to police headquarters for questioning. He was not under arrest at the time but a "John Doe" warrant had been issued. Before he was questioned his "Miranda" rights were explained and he said he understood, and signed a waiver. (This is not questioned in argument of appellant). When asked if he did the act in question, he stated, "I didn't do it." During further questioning at the same time officer Widner testified the following occurred:

"Q. From the time of the arrest or any time—when you first saw him until the time you talked to him, did you or anyone mention to him that there had been a young white lady raped?

"A. No, sir.

"Q. Did you mention it to anyone or did anyone in your presence mention this to him as you were questioning him?

"A. No, sir, we didn't.

"Q. Now, at some time during this conversation, that we've just been talking about, did you tell him why he was down there?

"A. Yes, sir, I did.

"Q. And do you have a note of what your exact words were?

"A. Yes, sir.

"Q. Would you read that to us please?

"MR. NICHOLS: I object to what the officer stated. I think this self-serving declaration would be inadmissible.

"MR. BURROUGHS: This is just advising him, Your Honor, of what he was being held for. His rights had been given him.

"THE COURT: Overrule.

"MR. NICHOLS: We except.

"A. The words that I told Willie—I said, 'Willie, we have a little—had a little incident that happeneed out on University last night, or not particularly at the University; it happened out there near the University; let's put it that way, right off University Avenue. We had a girl that was picked up. A boy matching your description . . .' (interrupted)

"MR. NICHOLS: Excuse me. Your Honor, please, I object to this. I don't know if the defendant has been given an opportunity to hear this. If they're going to read what he said I think it would be improper for the officer to read from a statement here that apparently was typed up from a machine or something. I don't know if it was taken down and transcribed exactly. I think the predicate ought to be laid a little bit better so we could see and whether the defendant acknowledges he said it. I think there's all kinds of room for error here. I object to him reading like this from a statement.

MR. BURROUGHS: We wanted to show what his exact words were, your Honor.

"THE COURT: Of course, Mr. Nichols, you have the right to examine that for cross-examination purposes.

"MR. CALLAHAN: May we have a right to examine that before we proceed any further.

"MR. BURROUGHS: You can examine what he's refreshing his memory from. Let him go ahead and answer if you would, please.

"MR. CALLAHAN: We object to him answering it yet until we have had an opportunity to examine it.

"THE COURT: I just ruled that Mr. Nichols could examine it if he wished.

"MR. NICHOLS: I'd like to examine it. I didn't realize that this officer was going to be called on to testify along this line. I thought we had straightened all that out before. (Examines officer's notes.) Is the whole statement going to be put in your Honor?

"MR. BURROUGHS: Not unless you want it in. I was just letting him refresh his memory from it, but I don't care.

"MR. NICHOLS: Well, I think the whole thing should be put in . This is the first time I've seen it. If I had known it before hand . . . (interrupted)

"MR. BURROUGHS: All I was going to ask him was this not his—so he would know exactly what he said.

"MR. NICHOLS: Your Honor, please, at some point we'd either with the district attorney and this witness or later on, we'd like to get the whole statement in.

"THE COURT: All right, sir.

"MR. BURROUGHS: We have no objection.

"Q. Now, would you pick up there Sgt. Widner, about where a boy matching your description . . .?

"A. 'A boy matching your description jumped into the car with her down there and forced her to drive him to a place and raped her, and your picture was picked out as being the one. We layed out all the pictures we had and she went through them last night and we got some more today and she went through them and she picked your picture as being the one. What do you have to say about that?'

"Q. And what was his answer?

"A. 'Well, I'm not calling that young white lady a liar, but she is very wrong.' "

At the time appellant was given his "Miranda" rights he had not been advised of the nature of the matter under investigation nor had he been placed under formal arrest. In so far as shown by the record nothing had been said or indicated to him with regard to the race of the alleged victim, when he made the statement, last above set out that, "Well, I'm not calling that young white lady a liar, but she is very wrong."

■ Appellant first contends that the waiver of his rights, above referred to, was not made knowingly and understandingly, especially since he had not been advised of the charge against him at that time. He bases his claim to error in this respect on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

We have carefully examined that case and find no support therein of the argument by appellant that a defendant must be apprised of the offense or charge against him before he can knowingly and effectually waive his rights and make a voluntary statement.

Nor do we find any error, under the "totality of circumstances" doctrine as applied to the facts in the case at bar. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433.

We find no error in this respect in the record.

It is further contended that the admission of evidence taken from a transcript of a tape recording was error. It appears from the record that not only the evidence now alleged to be error by the appellant, but the entire record of the recording was introduced at the insistence of appellant.

Aside from this no proper objection nor ruling of the court on this matter was made, and therefore, there is nothing before this court to review. Madison v. State, 32 Ala. App. 617, 28 So.2d 927; Loyd v. State, 279 Ala. 447, 186 So.2d 731; Alabama Digest, Criminal Law, Volume 7, ☞1030(2).

During trial no proper objection was made to any of the matters heretofore referred to in this opinion, and therefore, the questions sought to be raised on appeal are not subject to review by this court. Loyd v. State, supra, and other authorities above set out, but in deference to the earnest insistence of counsel for appellant we have sought to demonstrate that, even so, no error appears.

The three requested written charges for the appellant, refused by the court, were either faulty or covered by given charges or the oral charge.

Numerous objections were made to arguments of the attorneys representing the state, but we are unable to say any injury resulted to the substantial rights of the appellant from the argument and rulings of the court. The case is therefore due to be affirmed.

The foregoing opinion was prepared by Honorable W. J. HARALSON, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.