On September 10, 1980, the Grand Jury indicted Pamela Johnson charging that she "did, in the course of committing a theft of $1200.00 in lawful paper currency of the United States of America, the exact denominations of which are unknown to the Grand Jury, the property of Winn Dixie of Montgomery, Inc., a corporation, with the intent to promote or assist the commission of the Theft of Property First Degree, aid or abet Willie Davis, alias, who did threaten the imminent use of force against the person of Mary Johnson, with the intent to compel acquiescence to the taking of or escaping with the property, while the said Willie Davis, alias, was armed with a deadly weapon or dangerous instrument, to-wit: a pistol, in violation of § 13A-8-41 of the Code of Alabama." The jury found the appellant guilty of first degree robbery. After a presentence investigation and hearing the trial court sentenced appellant to 25 years' imprisonment.
On February 5, 1980, the appellant, two other women and three men drove from Montgomery, Alabama to Auburn, Alabama to do some "boosting" (shoplifting).
While in Auburn they stopped at a local shopping area where there was a sporting goods store and a Winn-Dixie supermarket. *Page 151 
While appellant and the other two women were in the sporting goods store one of the men, Willie Davis, went in the Winn-Dixie store to "check it out". After they had all returned to the "van" (i.e., the automobile in which they were traveling), Willie Davis convinced the other two men that "everything looked sweet" inside the Winn-Dixie store. Consequently, the three men returned to the grocery store and at gun point took approximately $1,200.00 in cash from the assistant manager and the cashiers. They ran back to the "van" where the appellant and the other two women were waiting. Willie Davis told appellant to drive and gave her directions.
During their escape the "van" had a "blow-out" which had to be repaired. Appellant stopped the vehicle and while the three men tried to repair the tire, the appellant and the other two women left the scene. The women were later apprehended by police officers in an upstairs closet of a vacant home where they had apparently sought refuge from the rain and cold.
Appellant was subsequently arrested as an accomplice in the robbery of the Winn-Dixie store. While in custody and after she was advised of her Miranda rights, the appellant made separate statements to both the Opelika Police Department and the Auburn Police Department. She did not sign the former statement, claiming that she was afraid of the three men involved in the robbery, but she did sign the statement made to the Auburn police.
Jerald Sparks, the Auburn Police Officer who transcribed the second statement by the appellant, testified that appellant's statement was not the result of threats, coercion, or intimidation and was therefore voluntary, and was taken only after appellant had been properly informed of and had signed a waiver of her Miranda rights.
Appellant openly admitted at trial that she was present at the time of the robbery. The only material fact in controversy was whether or not she knew before hand that the three men with her intended to rob the Winn-Dixie supermarket.
Appellant testified that she was "along for the ride", that she knew nothing of the robbery until after the fact, and that when she then tried to part company with the robbers, they forced her at gunpoint to drive the "get-away" vehicle (the "van").
One of the men involved in the robbery, Lumon Layton, testified that the appellant was present when the three men decided to go back in and rob the store. His testimony was confusing and self-contradictory, however, as to whether or not appellant overheard the robbery plans and as to whether or not she was forced to drive the "van".
The jury was convinced that appellant did know what was happening because they found her guilty of robbery as an accomplice under § 13A-2-23, Code of Alabama 1975.
 I
Appellant's primary contention on appeal is that the trial court erred in denying appellant's "oral demurrer" to the indictment. Appellant claims that the indictment, quoted herein, is defective in that it alleges "intent to promote or assist the commission of the Theft of Property First Degree," but charges actual aiding and abetting in a "robbery". Appellant points out that to be consistent with the complicity statute, § 13A-2-23 (2), Code of Alabama 1975, the indictment must charge the defendant with "the intent to promote or assist the commission of" the same crime for which it alleges the defendant "aids or abets such other person in committing." Since "theft" under § 13A-8-3 and "robbery" under § 13A-8-41
are separate crimes, appellant asserts that her "oral demurrer" to the indictment for failure to charge a crime should have been sustained.
In order for this court to rule on the validity of the indictment we must first determine the validity of appellant's "oral demurrer" as a vehicle for challenging an allegedly defective indictment.
 A
Appellant correctly asserts the current rule in Alabama that a "demurrer" is *Page 152 
the proper procedure to contest defects in an indictment.Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977); Crews v. State, Ala.Cr.App.,374 So.2d 436 (1979); Edwards v. State, Ala.Cr.App., 379 So.2d 336
(1979), cert. denied, Ala., 379 So.2d 339 (1980). Undoubtedly, the form of "demurrer" contemplated by this rule is a "written demurrer" not an "oral" one. In § 15-15-4, Code of Alabama 1975 the forms of pleas, replications, rejoinders and "demurrers" to be used in criminal proceedings are set out. Subsections (2) through (9) specify the writings required and do not mention the possibility of an oral form. Only subsection (10) mentions the possibility of an oral form, stating that "guilty pleas" may be made either orally or in writing. By negative implication we take this to mean that all other pleas, replications, rejoinders and "demurrers" in criminal proceedings must be in writing.
Recently, in Hancock v. State, Ala.Cr.App., 368 So.2d 581, cert. denied, Ala., 368 So.2d 587 (1979), Judge Harris in a holding consistent with this interpretation stated that "oral pleas are unknown in our practice" and reasoned that such oral pleas do not preserve anything for appellate review. This conclusion follows the principle expressed in 42 C.J.S.Indictments and Informations § 221 (1944) that a "demurrer" to an indictment must be in writing either under a statute so requiring or under the common law of a jurisdiction requiring written pleadings generally. Also, 41 Am.Jur.2d Indictments andInformations § 288 (1968) states that "written demurrers" are undoubtedly the general, if not universal, practice, independent of statute.
The reasons for requiring a writing are that a writing evidences notice to the opposing party and preserves the proceedings for the record. At least one jurisdiction with a statute specifically requiring a writing has, nevertheless, held that where the two reasons for the writing are satisfied anyway, a trial court's ruling on an "oral demurrer" may be reviewed. State v. Tucker, 252 Or. 597, 451 P.2d 471 (1978). Likewise, a New York appellate court "overlooked" the fact that a "demurrer" to an indictment was "oral" but ruled that the indictment was, nevertheless, sufficient to withstand the "demurrer" challenge. People v. Morgan, 229 N.Y.S.2d 128,34 Misc.2d 804 (1962).
It is our opinion that an "oral demurrer" is by nature a defective procedure that would not under usual circumstances preserve for our review the issue concerning the validity of the indictment.
However, under the peculiar facts of the case before us, where the oral demurrer and the trial court's rulings thereon are recorded in the transcript and there is no claim of insufficient notice to the opposing party, we are persuaded by the rationale in State v. Tucker, supra, and People v. Morgan, supra, to "overlook" the imperfection in the "demurrer" and reach the indictment issue. This decision is in accordance with our increasing interest in substance over form in modern pleading.
 B
As stated above, the specific defect in the indictment contested by the appellant is the insertion of the phrase "intent to promote or assist the commission of the Theft of Property First Degree" which is inconsistent with a charge of "robbery".
We would agree that this could be somewhat ambiguous under usual circumstances, but having reviewed the indictment and the transcript we are impressed with the reasoning of the trial court which stated at R. 16 and 17 that:
 "It is true that the indictment is not worded in the best manner possible, but under the new procedures now, both civil and criminal, it's the opinion of the Court that the Court should look to the substance of the pleading and not to the mere technical aspects of it. . . . The docket sheet shows that she is charged with robbery; the back of the indictment shows the charge of robbery; there has never been any question in anybody's mind what she is charged with and in *Page 153 
reading the indictment as a whole, taking in all aspects of the indictment, there is no question in the Court's mind that this defendant is charged with robbery and anyone reading the indictment as a whole could certainly tell that she is charged with robbery and this specific robbery."
We would not encourage trial courts to take it upon themselves to resolve indictment defects in all situations, but where, as here, such a defect is merely surplusage and does not prejudice the defendant, the trial court is certainly justified in upholding the indictment thereby expediting the defendant's trial.
We have often held that unnecessary averments in an indictment do not impair its validity, although they may hold the prosecution to the proof of them. McDaniel v. State,20 Ala. App. 407, 410, 102 So. 788 (1924), cert. denied, 212 Ala. 415,102 So. 791 (1925); Fitzgerald v. State, 53 Ala. App. 663,303 So.2d 162 (1974).
As long as the remaining portions of the indictment validly charge a crime, the existence of surplusage in the indictment will not effect the validity of a conviction. United States v.Hyde, 448 F.2d 815, 839, (5th Cir. 1971), cert. denied,404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972).
In the case before us the "intent to promote or assist the commission of" language was an apparent attempt by the drafter of the indictment to charge the defendant as an accomplice under § 13A-2-23, Code of Alabama 1975. This is no longer necessary because in Alabama the distinction between accomplices and principals has been abolished. Section 13-9-1, Code of Alabama 1975. Therefore, all persons concerned in the commission of the crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, must be indicted, tried and punished as principals. Watkins v.State, Ala.Cr.App., 357 So.2d 156 (1977), cert. denied, Ala.,357 So.2d 161 (1978); Williams v. State, Ala.Cr.App.,383 So.2d 547 (1979). United States v. Vines, 580 F.2d 850 (5th Cir. 1978), cert. denied, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 665
(1978).
We therefore hold that the indictment, as quoted above, when read as a whole, omitting the surplusage, fairly and adequately charges the appellant with the crime of "robbery". We uphold the trial court's ruling that the appellant was sufficiently informed by the indictment of the nature of the charge against her and that she was in no way prejudiced by the unnecessary phrase.
Of course, the trial court's ruling that the indictment was sufficient did not relieve the burden on the prosecution ofproving the elements of complicity, including "knowledge" on behalf of the appellant that the three men were going to commit the "robbery" and appellant's "intent to promote or assist in" its commission. Whether or not this burden was satisfied was a question which was fairly put to and resolved by the jury.
 II
Appellant also contends that her Miranda rights were not obeyed because the form read to her by Detective Sparks of the Auburn Police Department did not clearly state that she had a right to an attorney then and there but instead stated that "[t]he police cannot furnish me with a lawyer, but one will be appointed for me, if I wish, by the court." (R. 240). Consequently, appellant insists that the statement elicited from her at the time should not have been admitted into evidence at trial.
Appellant cites several cases for the proposition thatMiranda type warnings which convey the impression that appointed counsel is available only at some time in the future
are insufficient. Lathers v. United States, 396 F.2d 524 (5th Cir. 1968); Wilson v. State, 44 Ala. App. 570, 216 So.2d 741
(1968); Square v. State, 283 Ala. 548, 219 So.2d 377 (1968).
We need not question this principle derived from the Miranda
decision, because, having reviewed the warnings given in the instant case and the surrounding circumstances in totality, we find that there was no inference that an appointed attorney *Page 154 
could only be provided in the future, and that appellant's statement admitted into evidence as "Exhibit I" was understandingly, voluntarily, knowingly and intelligently made.Gibson v. State, Ala.Cr.App., 347 So.2d 576 (1977); Love v.State, Ala.Cr.App., 372 So.2d 414 (1979); Davis v. State, Ala.Cr.App., 401 So.2d 187 (1981).
In Lathers, supra, the 5th Circuit pointed out that an individual held for interrogation must be adequately informed that he is entitled to a "government-furnished counsel here and now", and that such phrases as "in the event he was arrested" [see Windsor v. United States, 389 F.2d 530 (5th Cir. 1968)] and "when he went to court" [see Fendley v. United States,384 F.2d 923 (5th Cir. 1967)] when given in conjunction with a statement of appellant's "right to appointed counsel" render this Miranda warning insufficient.
We find no such destructive phrases in the warnings given to appellant in this case. The record reveals at (R. 132) that Detective Sparks read and the appellant read and signed aMiranda waiver form which included:
 "I have the right to talk to a lawyer for advice before I answer any questions and to have him with me during questioning. I have this same right to the advice and presence of a lawyer even if I cannot afford one. The police cannot furnish me with a lawyer but one will be appointed for me if I wish by the Court." Emphasis added.
This language is not inconsistent with the waiver form approved by the 5th Circuit in Hodge v. United States,392 F.2d 552 (5th Cir. 1968). Furthermore, the appellant was read a waiver form identical to the Hodge form by Detective Moss of the Opelika Police Department prior to the questioning by Detective Sparks. Finally, appellant testified at (R. 175) of the record that she understood her right to have a lawyer present during questioning.
 III
Appellant's final argument on appeal is that the trial court erred by allowing into evidence those parts of appellant's pre-trial statement which evidenced both her intention to shoplift in Auburn on the day of the robbery and her previous shoplifting activity in Auburn with the same partners using the same technique two weeks earlier.
The appellant's "knowledge" of the activities she was involved in on the day of the robbery and her "intent" to participate were crucial issues in this case. During the trial appellant denied any "knowledge" of the unlawful purposes of the group she was with, and denied any "intent" to participate in shoplifting or the robbery in question. It was incumbent upon the prosecution to prove that she not only knew what was going on but also intended to "promote or assist" such activities. The evidence contested here went to the proof of this "guilty knowledge or scienter" and "intent" and was properly admitted under the exceptions to the general rule excluding evidence of prior criminal activity. Bobo v. State,56 Ala. App. 622, 324 So.2d 336 (1975); McDonald v. State,57 Ala. App. 529, 329 So.2d 583 (1975), cert. denied, 295 Ala. 410,329 So.2d 596, cert. denied, 429 U.S. 834, 97 S.Ct. 99,50 L.Ed.2d 99 (1976); Pope v. State, Ala.Cr.App., 365 So.2d 369
(1978).
For the reasons outlined above, this case is due to be and is affirmed.
AFFIRMED.
All the Judges concur.