Cedric Thomas, the appellant, was charged in a two-count indictment with noncapital murder and robbery. After a jury verdict of guilt on each count, the trial court sentenced him to life imprisonment for each offense. The State's evidence tended to show that Thomas was an accomplice, along with one Calvin Turner and others, in the robbery and murder of eighty-two year old Mrs. Mae Bell Wright of Gadsden. Aside from independent testimony that Thomas pawned some of Mrs. Wright's jewelry shortly after her murder, the primary evidence linking him to the robbery and murder consisted of the following statement he gave to the Gadsden police:
 "I am making this statement in regards to the death of Mrs. Wright on Ewing Ave. Gadsden, Alabama. I am making this statement in the presence of Lt. O'Bryant and Sgt. C.D. Hopper after having my rights explained to me. I understand each and every one of my rights as they were explained. On Thursday March 31, 1983, I was at home in the 6th Street project. I came out at approximately 6:30 P.M. I looked across the street and saw Crump and Fish tank outside Peggy Patterson's apartment. Crump had a big stick in his hand. Crump and Peggy was arguing and were cursing each other. Crump and Fishtank turned and walked out to the basketball court and stayed for a few minutes. They came back in a few minutes and Fishtank told me that he knew where we could make a lick. I asked him where and he said in North Ga. I asked him if there was any money and he said Yes, a bunch. I told him that we would go and check it out. I looked and saw that Davey Moore was parked in the parking bay in a Blue 65 Chev. Davey was driving and Fish Tank got in the front. Me and Crump got in the back seat. We left there and drove up Ewing Ave. We drove up to Crest Ave. (Dirt Road). It had already been decided that Crump and Fish tank was going in the house. On Crest we let Fish Tank and Crump out of the car and me and Davey went to Cleaners Hangers and Parked. Davey said we would wait on them there. It was some where between 10:00-11:00 P.M. when they went inside the house. It seemed as if they was in the house about 25-30 minutes. Fish Tank and Crump came running back to the car and they were give out. They both jumped in the back seat and Fish tank said We may be in trouble. When he said this it scared me because I knew he had done something. We left there and went back to the projects. Fish tank and Crump had some purses with them. When we got back to the projects, I jumped him about my money and Fish tank gave me a $20.00 bill and three rings. I got out of the car and Fish tank, Davey and Crump left. The next day I took two of the rings and pawned them in my own name at Jakes. I got $15.00 for the two rings. About a week later I ran into Fish tank and cracked him about what he done to the old lady. He said he hadn't killed any Damn body and didn't know what he was talking about. Fish tank hit me with a iron pipe. He has been going around in the projects saying he was going to kill me. I have not talked to Crump or Davey since the killing. This statement is true and correct to the best of my knowledge and no threats or promises have been made to get me to make this statement. It is being typed for me by Lt. O'Bryant."
 I
Thomas first contends that the indictment did not adequately inform him of the offense he was called to defend because (1) it did not track the language of the murder statute, (2) it did not refer to the felony-murder subsection, and (3) it did not incorporate the complicity statute by reference.
The indictment follows the language of § 13A-6-2 (a)(1), Code of Alabama 1975, *Page 902 
and is identical to the pattern indictment form for intentional murder approved by the Alabama Law Institute. See State ofAlabama Criminal Code Indictment and Warrant Manual at 6-1 (A.L.I. 1979).
The State was not required to indict Thomas for felony-murder pursuant to § 13A-6-2 (a)(3), Code of Alabama 1975. For practical purposes, Thomas had notice from the two-count indictment that the murder and robbery of Mrs. Wright were "based on the same conduct or . . . otherwise connected in their commission; or . . . alleged to have been part of a common scheme or plan." See Rule 15.3 (a)(ii) and (iii), A.R.Crim.P.Temp. It was also unnecessary for the charging instrument to incorporate the principles of the complicity statute by reference. See Stokley v. State, 254 Ala. 534,49 So.2d 284 (1950). "[All] persons concerned in the commission of the crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, must beindicted, tried and punished as principals." Johnson v. State,405 So.2d 149, 153 (Ala.Crim.App. 1981) (emphasis in original).
 II
The trial court did not abuse its discretion by denying Thomas' motion for a change of venue based on pretrial publicity. At the hearing on this issue, Thomas called two witnesses: the editor of the local newspaper and the news director of a local radio station. They testified about the media coverage given Thomas' alleged participation in the robbery-murder of Mrs. Wright. The record does not reveal, however, that Thomas questioned the prospective jurors on voir dire regarding the effect of the publicity.
Widespread publicity, without more, does not entitle the accused to a change of venue. McCray v. State, 395 So.2d 1057
(Ala.Crim.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981). Thomas had the burden of demonstrating a link between the publicity and actual jury prejudice, Dolvin v. State,391 So.2d 666, 674 (Ala.Crim.App. 1979), affirmed, 391 So.2d 677 (Ala. 1980). The proper way to ascertain whether adverse publicity may have biased the prospective jury is through the voir dire examination. Lopez v. State, 415 So.2d 1204, 1208
(Ala.Crim.App. 1982). In the absence of voir dire questions and answers on this issue, we cannot presume that Thomas was unable to receive a fair trial in Etowah County.
 III
Thomas claims the trial court erred by refusing to admit a statement made to the police by Thomas' accomplice, Calvin Turner, in which Turner purportedly assumed sole responsibility for the murder and exonerated Thomas. Turner was not called to testify on Thomas' behalf. The court's ruling here was proper since the statement was inadmissible hearsay. See McBryar v.State, 368 So.2d 568, 574 (Ala.Crim.App.), cert. denied,368 So.2d 575 (Ala. 1979); Prince v. State, 356 So.2d 750, 751
(Ala.Crim.App. 1978).
 IV
We have repeatedly held that an accused need not be informed of the precise criminal charges against him before he can effectively waive his rights under Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and make a voluntary statement. See Hale v. State, 420 So.2d 821, 823 (Ala.Crim.App. 1982); Myers v. State, 401 So.2d 288, 291 (Ala.Crim.App. 1981); Crawford v. State, 377 So.2d 145, 154 (Ala.Crim.App.), affirmed, 377 So.2d 159 (Ala. 1979); Jemison v. State,49 Ala. App. 289, 292, 270 So.2d 836 (1972).
 V
Thomas argues that the court's oral instructions referring to the felony-murder doctrine were erroneous because the indictment did not charge him with felony-murder. We agree.
Thomas was charged specifically with intentionally causing the death of Mrs. Wright. The section under which *Page 903 
Thomas was indicted provides that a person commits the crime of murder if "[w]ith intent to cause the death of another person he causes the death of that person or of another person." §13A-6-2 (a)(1).
The trial judge charged:
 "A person commits the crime of murder if he causes the death of another person and in performing the act or acts which cause the death of the person he intends to kill that person or if he commits or attempts to commit robbery in any degree and in the course — And in the furtherance of that — Of the crime that he is committing or attempting to commit or in immediate flight therefrom he or another participant causes the death of any person.
 "To sustain the charge of murder in this case the State by the evidence must prove beyond a reasonable doubt each of the following elements of the offense: That Cedric Thomas — No, that Mae Bell Wright, the deceased is dead, and, second, that the Defendant, Cedric Devon Thomas or another participant caused the death of Mae Bell Wright and that is, that she died as a result of strangulation as charged in the indictment, which was caused by the Defendant or another participant at the time of her death."
This was blatant error. The trial judge instructed the jury that they could find Thomas guilty of the intentional murder charged in the indictment if they found that he eitherintentionally killed Mrs. Wright or that he or another caused
her death in the commission of the robbery.
A comparison of the above portion of the judge's charge with Alabama's felony-murder doctrine codified at § 13A-6-2 (a)(3) reveals that the trial judge did in fact charge the jury on felony-murder. Section 13A-6-2 (a)(3) provides that a person commits the crime of murder if "[h]e commits or attempts to commit . . . robbery in any degree, . . . and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person."
An oral instruction on subsection (3) felony-murder constitutes a fatal variance from an indictment charging subsection (1) intentional murder unless felony-murder can be deemed a lesser-included offense of intentional murder. See Exparte Washington, 448 So.2d 404 (Ala. 1984). See also Ex parteHightower, 443 So.2d 1272 (Ala. 1983). In Washington, our Supreme Court held that in a trial on an indictment charging intentional murder, an instruction on universal malice murder constitutes error and a fatal variance.
It is clear that murder during the course of a robbery as specified in § 13A-6-2 (a)(3) cannot be a lesser-included offense of § 13A-6-2 (a)(1) intentional murder because one may be convicted of the subsection (1) intentional murder offense without proof of the robbery required for the subsection (3) felony murder offense. See Alabama Code § 13A-1-9 (a)(1) (1975).
The Court's references to felony-murder were not harmless here because liability under § 13A-6-2 (a)(1) (intentional murder) and § 13A-2-23 (complicity) hinges on intentional
conduct, see Washington v. State, supra; Watson v. State,439 So.2d 762, 768 (Ala.Crim.App. 1983), whereas intent is not an element of the felony-murder doctrine, Ex parte Ritter,375 So.2d 270, 273-74 (Ala. 1979). Under the felony-murder doctrine "it is not necessary that the individual accused of murder should have contemplated, intended, or willed the death of the victim." Ritter, 375 So.2d at 273.
Thus, the jury may have convicted Thomas of murder without finding that he had the intent to kill Mrs. Wright. Relying on the court's charge that they could find Thomas guilty of murder if they determined that he or another participant killed the victim in the course of robbing her, the jury would have been authorized to convict Thomas of a crime not charged in the indictment. In finding error we have applied the same analysis and reasoning as *Page 904 
did our Supreme Court in Washington, supra.
The judgment of conviction is reversed and the cause remanded to the Etowah Circuit Court.
REVERSED AND REMANDED.
All Judges concur.