This is an appeal from the denial of a motion for post-conviction relief that was filed pursuant to Rule 20, A.R.Crim.P.Temp. (now Rule 32, A.R.Crim.P.).
In April 1988, Jerome Peter Kuk, the appellant, was convicted for the murder of William Dillow. He was sentenced to 99 years' imprisonment, was fined $20,000, and was ordered to pay $4,000 in restitution. No direct appeal was taken from that conviction and sentence. The record currently before this Court does not contain the history of the appellant's post-conviction proceedings. However, in an earlier appeal involving the same petition now under consideration, we noted:
 "The appellant states that on June 15, 1988, he filed a petition for writ of habeas corpus in the Montgomery Circuit Court and that his petition subsequently was transferred to the Barbour Circuit Court. The appellant says that on January 27, 1989, he filed a petition under Rule 20 in the Barbour Circuit [C]ourt, that notice of appearance by counsel was filed on March 9, 1989, and that the petition was set for hearing on September 22, 1989. The appellant further says that on August 25, 1989, his counsel amended the petition and that, on or about the same date, he filed a pro se motion to dismiss the petition. The record indicates that on October 30, 1989, the appellant's motion to dismiss was granted and that on October 31, 1989, a motion by his counsel to withdraw also was granted. On April 4, 1990, the appellant filed the present petition, which was summarily dismissed on April 6, 1990, 'due to a previous Rule 20 [petition] having been filed.' "
Kuk v. State, 580 So.2d 750, 751 (Ala.Cr.App. 1991). Because there was nothing in the record to indicate either that the appellant's prior Rule 20 petition had been adjudicated on the merits or that the State had met its burden of pleading that fact as a ground of preclusion, this Court remanded the cause for further proceedings. Kuk,580 So.2d at 751-52. On remand, the trial court conducted an evidentiary hearing on the merits of the petition, permitted the parties to brief several points, and allowed the parties to offer written closing arguments. The trial court subsequently entered a written order denying the petition. R. 79C-93C.
 I.
The appellant was represented at trial by two retained attorneys.[1] As one of the grounds of his Rule 20 petition, the appellant asserted that the performance of these attorneys before and during his trial amounted to the ineffective assistance of counsel. A large part of the evidentiary hearing was devoted to this allegation, with both of the appellant's trial attorneys, the appellant, and an attorney called by the appellant as an expert witness testifying on the matter.
A convicted defendant who claims that his attorney was ineffective must meet the two-prong test set out inStrickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made *Page 1215 
errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
In order to meet the first prong of the Strickland
test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."466 U.S. at 688, 104 S.Ct. at 2064. He must also "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690,104 S.Ct. at 2066.
In assessing whether a defendant has established the first prong of the Strickland test, a reviewing court
 "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.
To support his claim that his trial attorneys were ineffective, the appellant has identified eleven specific omissions that he alleges fell below the Strickland
"objective standard of reasonableness." One of these omissions is the attorneys' failure to object to the trial court's instructing the jury on reckless murder.
"Under Alabama law, there are three forms of murder: 'intentional murder,' defined in [Ala. Code 1975,] §13A-6-2(a)(1); 'reckless [or universal malice] murder,' defined in § 13A-6-2(a)(2); and 'felony murder,' defined in §13A-6-2(a)(3)." Starks v. State, 594 So.2d 187, 193
(Ala.Cr.App. 1991). The appellant was charged in a one-count indictment with intentional murder only. See Supp.R. 28, 240-41. However, the trial court instructed the jury on both intentional murder and reckless murder. Supp.R. 245-48. The case of Marsh v. State,418 So.2d 191 (Ala.Cr.App. 1982) (hereinafter "Marsh I"), involved this same situation. Marsh objected to the reckless murder instruction at trial and, on appeal, argued that that instruction constituted a fatal variance from the indictment, which charged him with only intentional murder. MarshI, 418 So.2d at 192. With a minimum of discussion, this Court held that the jury charge on both intentional murder and reckless murder was proper. Marsh I,418 So.2d at 192-93.
Marsh I was decided May 18, 1982, and the Alabama Supreme Court denied certiorari review on August 27, 1982. Less than two years later, however, our Supreme Court overruledMarsh I and held that it is reversible error for a trial judge to instruct the jury on reckless murder where the indictment charges the defendant with only intentional murder.Ex parte Washington, 448 So.2d 404 (Ala. 1984) (decided March 9, 1984). The Court began its discussion by recognizing that
 "[a] defendant is constitutionally entitled to be informed of the nature and the cause of the accusation against him. The function of the indictment is to inform the accused of the crime with which he is charged, so that he may prepare a defense if one is available. The person accused of a crime is required at trial to answer only the specific charge contained in the indictment."
Ex parte Washington, 448 So.2d at 407 (citations omitted) (emphasis added). After determining that intentional murder and reckless murder are, in fact, different
offenses, the Court "conclude[d] that the trial court erred in giving an instruction on ['reckless' or] 'universal malice' murder. Defendant has a constitutional right to be *Page 1216 
informed of the charges against him." Ex parteWashington, 448 So.2d at 408.
Within ten months after the release of the Alabama Supreme Court's opinion in Ex parte Washington, this Court had summarily reversed five murder convictions on the authority of that opinion. Dawson v. State, 449 So.2d 800
(Ala.Cr.App. 1984) (decided April 10, 1984); Hughley v.State, 451 So.2d 439 (Ala.Cr.App. 1984) (decided May 22, 1984); Ponder v. State, 451 So.2d 1382 (Ala.Cr.App. 1984) (decided June 12, 1984); Bell v. State,455 So.2d 1022 (Ala.Cr.App. 1984) (decided August 28, 1984);Marsh v. State, 461 So.2d 51 (Ala.Cr.App. 1984) (decided December 11, 1984) (hereinafter "Marsh II"). The last of these five cases, Marsh II, involved the same defendant whose conviction we had affirmed in MarshI. In Marsh II, we determined that the holding ofEx parte Washington was to be applied retroactively, and we reversed Marsh's conviction based on the improper jury instruction on reckless murder. Marsh II,461 So.2d at 53.
In Mathews v. State, 491 So.2d 1087 (Ala.Cr.App. 1986) (decided May 27, 1986), we again reversed a murder conviction where the indictment had charged only intentional murder and the trial court had instructed the jury on reckless murder. Eighteen months later, we held that an instruction on reckless murder where the defendant was charged with only intentional murder was not harmless error under Rule 45, A.R.App.P. Hall v. State, 520 So.2d 218 (Ala.Cr.App. 1987) (decided October 27, 1987). In each of the cases cited above, defense counsel objected to the reckless murder charge at trial.
The appellant was tried on April 25, 1988, more than fouryears after Ex parte Washington was decided. We are of the opinion that any reasonably competent attorney would have been aware, at the time of the appellant's trial, of Washington and at least most of its progeny.[2]
Consequently, we find that the performance of the appellant's retained trial attorneys in failing to object to a clearly erroneous jury instruction "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688,104 S.Ct. at 2064. It is simply impossible for this Court to conclude that, "under the circumstances, the challenged action 'might be considered sound trial strategy.' "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. SeeCommonwealth v. Stago, 267 Pa. Super. 90, 406 A.2d 533, 53638 (1979).
In its written order, the trial court recognized that the instruction on reckless murder constituted error at the appellant's trial, but found that the appellant was not prejudiced by the attorneys' failure to object to the instruction. The court set forth two reasons for its finding: First, the " 'totality' of the evidence," including "eye witnesses who . . . saw the murder," was heavily against the appellant and "[a]n objection to the jury instruction would have changed nothing about the [appellant's] guilt." R. 90C. The trial court's second reason appears to be that the appellant did not take a direct appeal from his conviction, and thus an objection, if made, would have been "lost." R. 89C. We cannot agree *Page 1217 
with the trial court's conclusion that the appellant was not prejudiced by his attorneys' failure to object to this erroneous instruction or with either of the reasons advanced by the trial court for its conclusion.
As we observed in Marsh II:
 "The Alabama Supreme Court clearly stated in its opinion in Washington, supra, that the reason it reversed Washington's conviction was that a 'defendant has a constitutional right to be informed of the charges against him.' Washington, supra at 408.
 "If a defendant is only charged with 'intentional murder' but the trial judge also charges the jury on 'reckless murder' there is a distinct possibility that the jury could find the defendant guilty of 'reckless murder' rather than 'intentional murder.' There is a serious risk that a defendant, in this situation, could be convicted of an offense for which he was not charged and [from] which he had no opportunity to defend himself.
 "It is clear to this court that the rule of law set out in Washington, supra, raises serious questions about the accuracy of guilty verdicts in past trials in which a 'reckless murder' instruction has been given even though the defendant was only charged with 'intentional murder.'"
Marsh II, 461 So.2d at 53 (emphasis added). Cf.Thomas v. State, 452 So.2d 899, 903 (Ala.Cr.App. 1984) (decided May 22, 1984) (reaching the same conclusion where the trial court instructed the jury on intentional murder and felony murder when the defendant was charged only with intentional murder: "Thus, the jury may have convicted Thomas of murder without finding that he had the intent to kill [the victim]. Relying on the court's charge that they could find Thomas guilty of murder if they determined that he oranother participant killed the victim in the course of robbing her, the jury would have been authorized to convict Thomas of a crime not charged in the indictment.").
While there were two witnesses who testified that they observed the events leading up to the shooting of the victim, neither of these witnesses testified that he or she actually saw the appellant shoot the victim. In fact, both of the witnesses testified that the shooting occurred in the yard of the appellant's residence, that they were inside the residence at the time of the shooting, and that they looked out the window only after hearing a gunshot. Furthermore, both of these witnesses testified that the appellant had consumed a substantial amount of alcohol on the day of and the day prior to the murder. At the appellant's request, the trial court charged the jury that voluntary intoxication, while not an excuse for a criminal act, could be so excessive as to "render the intoxicated person incapable of forming a specific intent." Supp.R. 253. The court also charged the jury on the lesser included offense of manslaughter. R. 248-49. Under the evidence adduced, the appellant was clearly entitled to these charges. See McConnico v. State, 551 So.2d 424, 426
(Ala.Cr.App. 1988); Peterson v. State, 520 So.2d 238,239-40 (Ala.Cr.App. 1987); Anderson v. State,507 So.2d 580, 584 (Ala.Cr.App. 1987); Commentary to Ala. Code 1975, § 13A-3-2.
Thus, under the particular circumstances of this case, there was a substantial danger that the appellant was convicted of a crime for which he was not indicted. The trial court's instructions, taken as a whole, permitted the jury to convict the defendant of reckless murder (an uncharged offense), even if it found that the appellant's intoxication rendered him incapable of forming the specific intent necessary to convict him of intentional murder (the charged offense). The State's evidence did indicate that the appellant killed the victim; however, that same evidence also created a jury question as to the degree of the appellant's culpability. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington,466 U.S. at 686, 104 S.Ct. at 2064. In this case, the attorneys' failure to object to the erroneous instruction on reckless murder left the jury *Page 1218 
free not only to convict the appellant of a crime not charged, but could have deprived the appellant of the benefit of the instruction on the lesser included offense of manslaughter. Clearly, the appellant's trial "cannot be relied on as having produced a just result."
As for the trial court's second reason for finding that the appellant suffered no prejudice, we observe that had the appellant taken a direct appeal from his conviction, the issue of the improper jury instruction on reckless murder would not have been reviewed by this Court because there was no objection to that charge at trial. Biddie v. State,516 So.2d 847 (Ala. 1987); Goins v. State, 521 So.2d 97
(Ala.Cr.App. 1987); Geter v. State, 468 So.2d 197
(Ala.Cr.App. 1985). See Rule 14, A.R.Crim.P.Temp. (now Rule 21.2, A.R.Crim.P.). This only serves to strengthen our belief that the appellant was prejudiced by the failure of the attorneys' to object to this charge — the defendants inEx parte Washington and its progeny all received new trials because their attorneys did object to the charge.
We conclude that the appellant has met the two-prong test ofStrickland v. Washington and that his trial attorneys provided him with ineffective assistance. Thus, the trial court erred in denying the appellant's Rule 20 petition on this ground.
Having concluded that one of the eleven specific omissions of counsel cited by the appellant did, in fact, amount to ineffective assistance of counsel, we need not address the remaining ten. We do, however, observe that most of the remaining assertions focused on the attorneys' alleged failure to properly investigate possible defenses and their choice of and alleged failure to properly present a reasonable doubt defense. When questioned about these matters at the evidentiary hearing, both of the attorneys indicated that they had not reviewed their files regarding the appellant's case prior to the hearing. One of the attorneys even stated that she could not remember the specific defense utilized in the appellant's case and that she did not remember much of what she did to prepare for the appellant's trial. This Court recognizes that it is no pleasant matter for an attorney to be the subject of a claim of ineffective assistance of counsel. While the burden is on a defendant to show that his attorney was ineffective, where the facts are in conflict, testimony by the attorney clearly setting out what he or she did in preparation of the defendant's case is essential in order for any court to conclude that the attorney did act in a professionally reasonable manner.
 II.
This Court rejects the appellant's contention that he was subjected to double jeopardy because "the jury was impaneled and sworn on one date, released for approximately one month, the[n] reconvened to hear the case." Appellant's brief at 20.
The record of the appellant's trial reveals that a jury was struck and sworn on Monday, March 28, 1988. Supp.R. 22. The trial transcript contains no other occurrences for that day.[3] Four weeks later, on April 25, 1988, the parties and jurors reconvened and the appellant's trial went forward. Supp.R. 22. At that time, there was no objection on any ground to continuing with the trial.
From the testimony given at the evidentiary hearing on the appellant's Rule 20 petition, it appears that the case was continued on March 28 because one of the appellant's attorneys was suffering from a skin rash. Both of the trial attorneys testified that the continuance was had with the appellant's agreement. R. 71-72, 127. The appellant, however, indicated that the continuance had not been discussed with him. He testified that when "the judge turned *Page 1219 
the jury loose and told them to go home until the 25th of April," he asked his attorneys about the effect of double jeopardy and was informed that jeopardy did not attach until the indictment was read. R. 171-72. Under questioning by the trial court, the appellant stated that he was given no opportunity to object to the continuance. R. 191. The trial court, however, stated that it had provided the appellant with such an opportunity. R. 191. As noted above, the record for March 28 reflects none of this.
At the outset, we observe that this issue is not properly presented in a Rule 20 petition. A claim of double jeopardy must be timely raised at trial or it is waived. See Exparte Sales, 460 So.2d 1252 (Ala. 1984); Bolden v.State, 568 So.2d 841 (Ala.Cr.App. 1989). Thus, this is an issue that could have been raised at trial, but was not, and the issue is therefore precluded from consideration under Rule 20.2(a)(3), A.R.Crim.P.Temp. (now Rule 32.2(a)(3), A.R.Crim.p.).[4]
Moreover, this is simply not the type of situation that the guarantee against double jeopardy was intended to cover.
 "The general design of the Double Jeopardy Clause of the Fifth Amendment is that described in Green v. United States [, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)]:
 " 'The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "
United States v. DiFrancesco, 449 U.S. 117, 127-28,101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980). The concept of double jeopardy "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."North Carolina v. Pearce, 395 U.S. 711, 717,89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). "[T]he constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' "Arizona v. Washington, 434 U.S. 497, 503,98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) (quoting Wade v.Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974
(1949)). This last aspect of the double jeopardy protection prevents the prosecution from terminating a trial prior to verdict in the hope of gaining some tactical advantage upon retrial. See generally 3 W. LaFave J. Israel, CriminalProcedure § 24.1 at 60-61 (1984).
Clearly, jeopardy attached in this case when the jury was initially sworn on March 28. Crist v. Bretz,437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). However, just as clearly, the appellant was not subjected to double jeopardy. The appellant was not tried twice for the same crime and there is no indication that the prosecution gained any tactical advantage by the delay. In fact, the continuance was sought by the appellant's attorneys and was obtained before any testimony was taken. Most importantly, the appellant was tried by the "particular tribunal" that was originally empaneled. While we certainly do not condone the practice of striking and swearing a jury only to release that jury with instructions to report back approximately a month later, such an occurrence, in and of itself, simply does not subject a defendant to double jeopardy. See State v. Johnson, *Page 1220 529 So.2d 466, 471-72 (La.App. 1988), writ denied,536 So.2d 1233 (La. 1989) (defendant not subjected to double jeopardy where trial court granted fourteen-day continuance after swearing of jury to permit prosecutor to answer defense counsel's discovery motion (which had been misfiled by defense counsel under the wrong case number) because defendant "was eventually tried by the same jury that had been empaneled and sworn prior to the recess"). Cf. Drake v. State,467 N.E.2d 686, 689-90 (Ind. 1984) (defendant not subjected to double jeopardy where trial court granted two-week continuance for State to secure presence of absent witnesses because "[j]eopardy attached when the jury was sworn and it was that same jury which rendered the verdict"); United States v.Bringhurst, 468 F.2d 604, 605 (5th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1399, 35 L.Ed.2d 603 (1973) (defendant failed to show any prejudice to support his claim that he was subjected to double jeopardy where "trial court either 'continued' or 'recessed' the trial after the jury was sworn because of the non-appearance of the Government's prosecuting witness, and some of the members of the jury, during the two day recess, actually were sworn and served on one or two other juries in the same court before they were reassembled to proceed with the trial of [the defendant's] case").
As part of this argument, the appellant reiterates one of the allegations he made with regard to his ineffective assistance of counsel claim — that his attorneys were ineffective in failing to question, on April 25, when his trial reconvened, a juror who indicated that she had learned something about the case during the four-week continuance. During the trial court's opening remarks upon reconvening the appellant's trial, the following occurred:
 "[THE COURT:] Now, since we have not been together for awhile I think it's my duty to ask you has anybody talked or attempted to talk about any of the facts of this case to you? (No response.) Have you found out anything about this case or about the facts of the case that you didn't know when we were here last time when you were selected as a jury to try this case?
"JUROR: (Raises hand.)
 "THE COURT: All right, ma'am. Would anything that you found out make any difference as to how you would decide the case or could you listen to the evidence as you hear it today and put it out of your mind?
"JUROR: Yes, sir.
 "THE COURT: All right. Would any of you attorneys like to ask this lady any questions?
"MR. LeMAISTRE [prosecutor]: (No response.)
"MR. MARTIN [defense counsel]: No, sir."
Supp.R. 25-26.
The requirements for prevailing on a claim of ineffective assistance of counsel were discussed at length in Part I above. Even if we assume, without deciding, that the appellant has met the first prong of the Strickland v. Washington test on this claim, he has failed to meet the second prong, i.e., he has failed to prove that he was prejudiced by the failure to question the juror. The juror was not called at the evidentiary hearing on the Rule 20 petition and the information she learned during the four-week continuance is not known. However, the trial court questioned her at trial regarding the effect of this information. As the appellant points out, the trial court's question was actually two alternative questions: 1) "Would anything that [she] found out make any difference as to how [she] would decide the case" or 2) "[C]ould [she] listen to the evidence as [she] hear[d] it . . . and put it out of [her] mind." This Court, of course, has no way of knowing which of the questions the juror was answering.
However, we have recently held, in a situation involving a similar two-part question by defense counsel to a veniremember, that "the trial judge was in the best position to observe [the veniremember's] demeanor and tone when she answered defense counsel's questions and to determine what her responses meant."Morrison v. State, 601 So.2d 165, 170 (Ala.Cr.App. 1992). We think the same holds true in this case. *Page 1221 
The trial court apparently determined that the juror was saying that she could listen to the evidence and put "out of [her] mind" whatever information she had learned during the continuance. The appellant has offered no evidence to disprove this determination. In fact, the appellant has failed to demonstrate that he was prejudiced in any way by the four-week continuance. We find no rational support for the appellant's claim that he was subjected to double jeopardy by that continuance.
For the reasons stated in Part I above, the judgment of the circuit court denying the appellant's Rule 20 petition is reversed and this cause is remanded for retrial.
REVERSED AND REMANDED.
PATTERSON, P.J., and TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., dissents without opinion.
[1] One of these attorneys was a member of the Alabama bar practicing in Eufaula, Alabama. The other attorney was a member of the Georgia bar practicing in Barnesville, Georgia. The Alabama attorney associated the Georgia attorney on the appellant's case because she had never represented a defendant charged with murder. R. 16.
[2] Indeed, our research reveals that Mathews v.State, 491 So.2d 1087 (Ala.Cr.App. 1986), appears in the annotation to § 13A-6-2 in the 1987 cumulative supplement to Volume 12 of the Alabama Code. The annotation reads:
 "Instruction under subdivision (a)(2) is error where indictment charges under subdivision (a)(1). —
Because an accused has the right to be informed of the charges against him, it is error for the trial court to instruct the jury on 'universal malice' murder under subdivision (a)(2) of this section where the indictment only specifically charges that defendant acted intentionally in causing the victim's death, under subdivision (a)(1) of this section." 1987 cumulative supplement at 67.
Also appearing in the annotation to § 13A-6-2 in the 1987 cumulative supplement is Thomas v. State,452 So.2d 899 (Ala.Cr.App. 1984). That annotation reads:
 "In a trial on an Indictment charging intentional murder, an instruction on universal malice murder constitutes error and a fatal variance." 1987 cumulative supplement at 68.
Although Thomas actually involved an instruction on felony murder where the defendant was charged with only intentional murder, the case did cite Ex parteWashington for the proposition appearing in the annotation.
[3] The transcript provides only the following information:
"* * * * * *
"MORNING SESSION — MONDAY, MARCH 28, 1988 — 9:00 A.M.
"(Roll call of prospective jurors.)
(Prospective jurors were duly sworn.)
 (Jury and alternate jurors were qualified, selected, and duly sworn.)
* * * * * *"
Supp.R. 22. The very next entry in the transcript is "MORNING SESSION — MONDAY, APRIL 25, 1988 —8:59 A.M." Id.
[4] The appellant does not contend that his attorneys were ineffective in failing to assert a claim of double jeopardy. *Page 1222 
[EDITORS' NOTE: PAGE 1222-1235 CONTAINS DECISIONS WITHOUT OPINIONS.]
 *Page 52