TAYLOR, Judge.
The appellant, Tommy Jerome Cook, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to life in prison.
The state’s evidence tended to show that on October 12, 1991, Kelvin Stokes died as a result of a shotgun wound to his leg. Dr. Joseph Embry, a forensic pathologist, testified that Stokes died from a shotgun wound to his left thigh, which severed a major artery and caused him to bleed to death. Em-bry further stated that he found 403 shotgun pellets in the victim’s body and a small caliber bullet in his left knee.
Victor Hollis, a friend of the victim’s, testified that at approximately 6:00 p.m. on the evening of the murder he and the victim were in the front yard of the victim’s mother’s house. The appellant drove up in front of the house in a car with Quan Cook and another man. The appellant got out of the car and asked where he could find Cephus Redwine. (Redwine testified that before the murder he had stolen some speakers out of the appellant’s car. He also stated that Kelvin was with him when he later sold the speakers.) Hollis stated that Quan then shouted “there is the m_f_,” got out of the car, and opened the trunk and got a shotgun. He said that both Quan and the appellant started shooting at Kelvin. Kelvin ran, and Quan and the appellant got in the car and chased him. Hollis testified that the next time he saw Kelvin, Kelvin was in his brother’s — Greg Stokes — yard and Kelvin had suffered a bullet wound to Ms tMgh.
Greg Stokes testified that on the evening of the murder, he heard shooting and looked out and saw the appellant in his yard, pointing a .22 rifle in the air. He said that he also *230 saw Quan Cook holding a shotgun and he saw Kelvin in front of Cook, holding the barrel of the shotgun away from him and downward. Stokes said that he went to call his mother and that he then heard a gunshot. He testified that when he returned to the porch, he saw his brother on the ground.
Alan Stokes, another brother of the victim, testified that on the evening of the murder he saw three young males shooting at his brother. He identified one of the young males shooting at his brother as the appellant.
Derrick Brown testified that he was standing on the corner of Grasselli Avenue, near the site of the murder, around 6:00 p.m. on October 12, 1991, when the appellant, Quan Cook, and Lee Snow drove up beside the curb in an automobile. Brown testified that the appellant got out of the car and that he was carrying a .25 caliber pistol. Brown testified that the appellant asked him if he knew where Kelvin Stokes was and told him that he intended to shoot Kelvin. Brown stated that when Quan opened the trunk he saw a shotgun and a rifle. Brown also testified that he later saw the appellant and that the appellant said, “I told you I was going to shoot Kelvin.”
The appellant testified in his own behalf and stated that he was not arguing with Kelvin. He said that he got the rifle out of the trunk for protection and that he did not shoot anyone.
I
The appellant initially contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the state failed to establish a prima facie case of murder. Section 13A-6-22(a)(l), Code of Alabama 1975, states:
“(a) A person commits the crime of murder if:
“(1) With intent to cause the death of another person, he causes the death of that person or of another person_”
Specifically, the appellant contends that there was no evidence to show that he intended to cause the death of Kelvin Stokes.
“‘Because the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.’ Johnson [v. State, 390 So.2d 1160] 1167 [ (Ala.Cr.App.), writ denied, 390 So.2d 1168 (Ala.1980) ].”
Benton v. State, 536 So.2d 162, 164 (Ala.Cr.App.1988). Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985).
Here, there was testimony that the appellant stated that he was going to shoot Kelvin. Also, the appellant was armed with a deadly weapon. There was sufficient evidence presented for the jury to find that the appellant intended to kill the victim. Any conflict in the evidence presented was for the jury to resolve. Brown v. State, 588 So.2d 551 (Ala.Cr.App.1991). The trial court did not err in denying the appellant’s motion for a judgment of acquittal.
II
The appellant also contends that the trial court erred in charging the jury on complicity when complicity was not a charge in the indictment. After the jury instructions were given, defense counsel announced that he was satisfied. Thus, no issue surrounding the instructions was preserved for this court’s review. Rule 21.2, A.R.Crim.P.
Furthermore, as Judge Bowen stated in Thomas v. State, 452 So.2d 899 (Ala.Cr.App.1984):
“It was ... unnecessary for the charging instrument to incorporate the principles of the complicity statute by reference. See Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950). ‘[A]ll person concerned in the commission of the crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, must be indicted, tried and punished as principals.’ Johnson v. State, 405 So.2d 149, 153 (Ala.Crim.App.1981) (emphasis in [Johnson ]).”
452 So.2d at 902.
III
The appellant next contends that the trial court erred in denying his motion to suppress *231 the introduction into evidence of the rifle, which, he says, was illegally seized from his residence.
Officers Charles Hubbard and Roddy Howell and Ms. Gwendolyn Cook, the appellant’s mother, testified on voir dire concerning the circumstances surrounding the seizure of the rifle from Cook’s residence. The record reflects that early in the morning of October 13, 1991, officers of the Birmingham Police Department went to the house where the appellant was living with his mother. Officers Hubbard and Howell testified that Ms. Cook opened the door and that they told her that her son was a suspect in a murder investigation and that they wanted to speak with him. Ms. Cook said that her son was asleep in his bedroom. The officers then asked Ms. Cook if they could come into the house and look around. The officers stated that Ms. Cook said that they could look around and take anything they needed for the investigation. While the officers were walking through the house they saw a .22 caliber rifle lying on the sofa. Ms. Cook told the officers that they could take the gun.
Ms. Cook testified that the officers knocked on the door and asked to speak with the appellant because he was a suspect in a murder investigation. She said that she let the officers in the house but that she did not give them permission to search her house. She also contradicted the officers’ testimony, stating that the rifle was not on the sofa but was under the sofa.
After hearing the testimony the trial court allowed the rifle to be received into evidence.
“A person may consent to a search without a warrant and thereby waive any protection afforded by the Fourth Amendment to his right of privacy.” Ex parte Wilson, 571 So.2d 1251,1255 (Ala.1990). The prosecutor has the burden of proving that the consent was voluntary. Ball v. State, 592 So.2d 1071 (Ala.Cr.App.1991). However,
“ ‘[W]hen conflicting evidence is presented on the issue of the voluntariness of a consent to search and the trial judge finds that the consent was voluntarily given, great weight must be given his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Sullivan v. State, 340 So.2d 878, 880-881 (Ala.Cr.App.), cert. denied, 340 So.2d 881 (Ala.1976).’ ”
592 So.2d at 1074, quoting Weatherford v. State, 369 So.2d 863, 871 (Ala.Cr.App.), writ denied, 369 So.2d 873 (Ala.), cert. denied, 444 U.S. 867,100 S.Ct. 141, 62 L.Ed.2d 91 (1979).
The trial court’s ruling is supported by the evidence presented at trial.
The appellant further argues that his mother did not have the authority to consent to the search. However, Ms. Cook had the authority to consent to a search of the common areas of the house. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The rifle was correctly received into evidence.
For the foregoing reasons, the judgment in this cause is due to be affirmed. AFFIRMED.
All the Judges concur.